**Howard P. STEWART, Plaintiff,**

v.

**John ASHCROFT, U.S. Attorney General, Defendant.**

**No. Civ.A. 01–0265RMU.**

United States District Court, District of Columbia.

July 25, 2002.

David H. Shapiro, Swick & Shapiro, Washington, DC, for plaintiff.

Lois B. Osler, Judry L. Subar, U.S. Department of Justice Civil Division, Washington, DC, for defendant.

## MEMORANDUM OPINION

### GRANTING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

URBINA, District Judge.

## I. INTRODUCTION

Howard P. Stewart ("the plaintiff" or "Mr. Stewart") brings this employment-discrimination case against the United States Department of Justice ("the defendant" or "DOJ"). Mr. Stewart alleges that the DOJ violated Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e et seq., by discriminating against him on the basis of his race. Specifically, the plaintiff claims that the defendant discriminated against him when it passed him over on two occasions for the position of Chief of the Environmental Crimes Section ("ECS") of the DOJ's Environmental and Natural Resources Division ("ENRD") giving the promotion to two white male employees. The defendant now moves for summary judgment. For the reasons that follow, the court grants the defendant's motion on both counts.

## II. BACKGROUND

An African–American man, Mr. Stewart worked for more than 15 years at the DOJ as an attorney in various departments, including the Criminal Division's Fraud Section, the U.S. Attorney's Office of Pennsylvania, and the ECS. Compl. at 3–4. After performing well as a prosecutor during his service at the DOJ, he was promoted to the Senior Executive Service ("SES"). Id. Ronald A. Sarachan, then ECS Chief, recommended him for the position to Lois J. Schiffer, then Assistant Attorney General in charge of the ENRD. Id.; Pl.'s Opp'n to Mot. for Summ.J. ("Pl.'s Opp'n") Ex. 4 at 1. In 1995, Mr. Stewart became the only SES-level employee in the ECS other than the person holding the position as Section Chief. Compl. at 4. At the same time, the DOJ appointed Mr. Stewart to his current position, Senior Litigation Counsel. Id.

The principal factual allegations are as follows. In 1997, the position of ECS Chief became vacant and Mr. Stewart applied. Id. After evaluating 10 candidates, Ms. Schiffer selected Steven Solow, a white male, for the position because "he had the temperament and expertise to provide the leadership to the Section...." Mot. for Summ.J. at 1, 8. In August 1998, Mr. Stewart filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging racial discrimination because he believed he was the most qualified candidate for the position of Chief. Pl.'s Opp'n at 2, 12, 17. In 2000, the position of ECS Chief became vacant again, and Mr. Stewart again applied.

Compl. at 5. Ms. Schiffer chose David Uhlmann after apparently receiving strong recommendations in support of his candidacy. Mot. for Summ.J. at 25, 26 (citing Cruden Dep. at 10–11; Sobeck Dep. at 84–85). Ms. Schiffer ultimately concluded that, "[c]ertainly Mr. Stewart had great strengths, but I thought that Mr. Uhlmann had greater strengths." *Id.* at 25.

On both counts, Mr. Stewart contests that he suffered adverse employment actions since the ECS Chief position would have entailed "significantly elevated supervisory duties and responsibilities" as compared to his current job. Pl.'s Opp'n at 18. Mr. Stewart contends that the DOJ unlawfully discriminated against him because of his race by favoring less qualified, lower-graded white candidates. *Id.* at 2. On February 5, 2001, the plaintiff filed suit seeking $600,000 in compensatory damages, a retroactive promotion, including back pay and adjustment of benefits, and permanent injunctions against the defendant to prevent any further acts of discrimination or retaliation. Compl. at 7–8. The defendant now moves for summary judgment on both of the plaintiff's claims.

### III. ANALYSIS

#### A. Legal Standard for Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Diamond v. Atwood,* 43 F.3d 1538, 1540 (D.C.Cir.1995). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Lib-*

*erty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252, 106 S.Ct. 2505. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id.*

In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton,* 164 F.3d 671, 675 (D.C.Cir.1999); *Harding v. Gray,* 9 F.3d 150, 154 (D.C.Cir.1993). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Greene,* 164 F.3d at 675. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (internal citations omitted).

Finally, the D.C. Circuit has directed that because it is difficult for a plaintiff to establish proof of discrimination, the court should view summary-judgment motions in

such cases with special caution. *Aka v. Washington Hosp. Ctr.,* 116 F.3d 876, 879–80 (D.C.Cir.1997), *rev'd on other grounds,* 156 F.3d 1284 (D.C.Cir.1998) (en banc); *see also Johnson v. Digital Equip. Corp.,* 836 F.Supp. 14, 18 (D.D.C.1993).

**B. The *McDonnell Douglas* Framework**

To prevail on a claim of race discrimination under Title VII, a plaintiff must follow a three-part burden-shifting analysis. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. The Supreme Court explained this scheme as follows:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a *prima-facie* case of discrimination. Second, if the plaintiff succeeds in proving the *prima-facie* case, the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.' Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.... The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.

*Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) (quoting *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817 (citations omitted)).

Thus, the plaintiff must first establish a prima-facie case of prohibited discrimination. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817; *Aka,* 156 F.3d at 1288; *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 140–43, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). The plaintiff need not, however, establish a prima-facie case in the complaint. *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). As a general matter, a prima-facie case of disparate treatment discrimination based on race consists of the following elements: (1) the plaintiff is a member of a protected class; (2) the plaintiff suffered an adverse employment action; and (3) the unfavorable action supports an inference of discrimination. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817; *Brown v. Brody,* 199 F.3d 446, 452 (D.C.Cir.1999).

The plaintiff has the burden of proving the prima-facie case by a preponderance of the evidence. *Burdine,* 450 U.S. at 252–53, 101 S.Ct. 1089. "The burden of establishing a prima-facie case of disparate treatment is not onerous." *Id.* at 253, 101 S.Ct. 1089. By proving a prima-facie case, the plaintiff has established "a legally mandatory, rebuttable presumption." *Id.* at 254 n. 7, 101 S.Ct. 1089. Accordingly, if at trial, the court concludes that the trier of fact must believe the plaintiff's evidence, and if the employer is silent in the face of the presumption, the court must enter judgment for the plaintiff because no issue of fact remains in the case. *Id.* at 254, 101 S.Ct. 1089. In addition, once a plaintiff can demonstrate that she has met objective employment qualifications, the plaintiff has established her prima-facie case. *Accord Medina v. Ramsey Steel Co.,* 238 F.3d 674, 681 (5th Cir.2001) (stating that while courts should consider objective qualifications at the first step of the *McDonnell Douglas* framework, courts should consider subjective criteria only at the second and third steps of the analysis to avoid collapsing the entire analysis into a single initial step); *Jayasinghe v. Bethlehem Steel Corp.,* 760 F.2d 132, 135 (7th Cir.1985) (same); *Burrus v. United Tel. Co.,* 683 F.2d 339, 342 (10th Cir.1982) (same); *Lynn v. Regents of the Univ. of California,* 656 F.2d 1337, 1344 (9th Cir.

1981) (same); *Walker v. Mortham,* 158 F.3d 1177, 1192–93 (11th Cir.1998) (holding that while a plaintiff may need to address relative qualifications between job applicants if the defendant presents them to rebut the plaintiff's presumption of discrimination, the plaintiff need not introduce evidence regarding relative qualifications to prove her prima-facie case).

If the plaintiff succeeds in making a prima-facie case, the burden shifts to the employer to articulate a non-discriminatory reason for its action. The employer's burden, however, is merely one of production. *Burdine,* 450 U.S. at 254–55, 101 S.Ct. 1089. The employer "need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Id.* If the employer is successful, the burden shifts back to the plaintiff to show that the defendant's proffered reasons are pretextual and that unlawful discrimination was the real reason for the action. *McDonnell Douglas,* 411 U.S. at 802–05, 93 S.Ct. 1817; *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 508, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

The defendant's explanation of its legitimate reasons must be "clear and reasonably specific" so that the plaintiff is "afforded a full and fair opportunity to demonstrate pretext." *Burdine,* 450 U.S. at 258, 101 S.Ct. 1089 (citation omitted). The defendant must articulate a clear and reasonably specific factual basis for its subjective reason to be legally sufficient, legitimate, and nondiscriminatory. *Id.* As the Eleventh Circuit has explained:

> [I]t might not be sufficient for a defendant employer to say it did not hire the plaintiff applicant simply because "I did not like his appearance" with no further explanation. However, if the defendant employer said, "I did not like his appearance because his hair was uncombed and he had dandruff all over his shoulders," or … "because he came to the interview wearing short pants and a T-shirt," the defendant would have articulated a "clear and reasonably specific" basis for its subjective opinion—the applicant's bad (in the employer's view) appearance. That subjective reason would therefore be a legally sufficient, legitimate, nondiscriminatory reason for not hiring the plaintiff applicant.

*Chapman v. AI Transport,* 229 F.3d 1012, 1034 (11th Cir.2000) (*en banc*).

Once the defendant carries its burden of articulating a "legitimate, nondiscriminatory reason" for the employee's rejection, the plaintiff must then have an opportunity to prove to the fact finder by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but rather were a pretext for discrimination. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. "That is, the plaintiff may attempt to establish that he was the victim of intentional discrimination 'by showing that the employer's proffered explanation is unworthy of credence'" and that the plaintiff's membership in a protected class was the true reason for the employment action. *Reeves,* 530 U.S. at 142–44, 120 S.Ct. 2097 (quoting *Burdine,* 450 U.S. at 256, 101 S.Ct. 1089); *see also Aka,* 156 F.3d at 1290; *Mungin v. Katten Muchin & Zavis,* 116 F.3d 1549, 1554 (D.C.Cir.1997).

Both the Supreme Court and the D.C. Circuit have held that the burden-shifting scheme becomes irrelevant once both parties have met the burdens discussed earlier. *Reeves,* 530 U.S. at 142–44, 120 S.Ct. 2097; *Aka,* 156 F.3d at 1289. At that point, the relevant inquiry is whether there is sufficient evidence from which a

reasonable fact finder could find in favor of the plaintiff, although "the trier of fact may still consider the evidence establishing the plaintiff's prima-facie case and inferences properly drawn therefrom . . . on the issue of whether the defendant's explanation is pretextual." *Reeves*, 530 U.S. at 142–144, 120 S.Ct. 2097 (citing *Burdine*, 450 U.S at 255 n. 10, 101 S.Ct. 1089); *see also Aka*, 156 F.3d at 1290; *Mungin*, 116 F.3d at 1554.

The D.C. Circuit has ruled that simply casting doubt on the employer's proffered justification does not automatically enable the plaintiff to survive summary judgment. *Aka*, 156 F.3d at 1290–94. Rather, "the plaintiff's attack on the employer's explanation must always be assessed in light of the total circumstances of the case." *Id.* at 1291.

■ In short, once an employer has met its burden of advancing a nondiscriminatory reason for its actions, the focus of proceedings at summary judgment:

> will be on whether the jury could infer discrimination from the combination of (1) the plaintiff's *prima-facie* case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of discrimination that may be available to the plaintiff (such as independent evidence of discriminatory statements or attitudes on the part of the employer) or any contrary evidence that may be available to the employer (such as evidence of a strong track record in equal opportunity employment).

*Id.* at 1289. But the plaintiff need not present evidence "in each of these categories in order to avoid summary judgment." *Id.* Indeed, the D.C. Circuit interprets Su-

preme Court precedent to mean that, in some cases, a plaintiff who presents a *prima-facie* case that "strongly suggests intentional discrimination may be enough by itself to survive summary judgment." *Id.* 1289 n. 4 (citing *Burdine*, 450 U.S. at 255 n. 10, 101 S.Ct. 1089).

Applying these legal standards to the instant case, the court grants the defendant's motion for summary judgment.

## C. The Plaintiff Fails to Show that He Suffered an Adverse Personnel Action

■ While the defendant argues that the plaintiff cannot pursue his discrimination claims for several reasons,[1] the court notes that the key question in this case is whether the plaintiff suffered an adverse employment action thus enabling him to prove his prima-facie case. *Brown*, 199 F.3d at 452; Mot. for Summ.J. at 2–3.

As a preliminary matter, the court takes a moment to address what the elements of the plaintiff's prima-facie case should be in the instant case. While the parties disagree about whether the plaintiff has successfully proven his prima-facie case, the parties seem to agree that the applicable test is the prima-facie case for *denial of a promotion* based on race discrimination. Mot. for Summ.J. at 16; Pl.'s Opp'n at 17. This test consists of the following elements: (1) the plaintiff is a member of a protected class; (2) the plaintiff applied for and was qualified for the position at issue; (3) despite the plaintiff's qualifications, the defendant rejected the plaintiff; and (4) the position was filled by a similarly qualified employee from outside the protected class. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817; *Bundy v. Jackson*, 641 F.2d 934, 951 (D.C.Cir.1981).

1. For the sake of this motion for summary judgment, the court will assume without deciding that the plaintiff satisfied the statute of limitations and that the court thus has subject-matter jurisdiction to hear this case.

■ The court, however, does not view this as the appropriate test because this case involves the *denial of a lateral transfer* as opposed to the denial of a promotion. Consequently, the court employs the prima-facie test outlined by the D.C. Circuit in *Brown v. Brody*, another case involving the denial of a lateral transfer, for disparate treatment based on race discrimination. *Brown*, 199 F.3d at 452. The elements of the prima-facie case are as follows: (1) the plaintiff is a member of a protected class; (2) the plaintiff suffered an adverse employment action; and (3) the unfavorable action supports an inference of discrimination. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817; *Brown*, 199 F.3d at 452. For the reasons set forth below, the court concludes that this case concerns the denial of a lateral transfer. Indeed, although the defendant offers the prima-facie test for a denial of a promotion, the defendant also considers this case to involve the denial of a lateral transfer. "The rule in this Circuit is that the denial of a transfer from one position to another, where both positions provide the same pay and benefits, is not actionable under Title VII without proof that the plaintiff has suffered 'objectively tangible harm.'" Mot. for Summ.J. at 18 n. 8 (quoting *Brown*, 199 F.3d at 457).

■ In any event, even if the parties' proposed test for the prima-facie case were correct, the D.C. Circuit has made clear that in Title VII cases, a plaintiff still must demonstrate that she suffered an adverse personnel action. *Brown*, 199 F.3d at 455. "In short, in Title VII cases such as Brown's, federal employees like their private counterparts must show that they have suffered an adverse personnel action in order to establish a prima facie case under the *McDonnell Douglas* framework." *Id.*

■ The question for the court thus becomes whether the defendant's denial of a lateral transfer constitutes an adverse employment action. In *Brown*, the D.C. Circuit held that:

> a plaintiff who is made to undertake or who is denied a lateral transfer—that is, one in which she suffers no diminution in pay or benefits—does not suffer an actionable injury *unless* there are some *other materially adverse consequences* affecting the terms, conditions, or privileges of her employment or her future employment opportunities such that a reasonable trier of fact could conclude that the plaintiff has suffered objectively tangible harm.

*Brown*, 199 F.3d at 457 (emphasis added); *see also Freedman v. MCI Telecomm. Corp.*, 255 F.3d 840, 844 (D.C.Cir.2001). The plaintiff bears the burden of showing tangible employment action evidenced by firing, failing to promote, a considerable change in benefits, or a reassignment with significantly different responsibilities. *Brown*, 199 F.3d at 452, 456; *Flaherty v. Gas Research Inst.*, 31 F.3d 451, 457 (7th Cir.1994) (a "bruised ego" is insufficient when contesting a lateral transfer). Minor changes in opportunities or work-related duties do not constitute actionable injuries unless a decrease in salary or work-hour changes accompanies them. *Stewart v. Evans*, 275 F.3d 1126, 1135 (D.C.Cir.2002); *Mungin*, 116 F.3d at 1557. Consequently, a reasonable trier of fact must "conclude that the plaintiff has suffered objectively tangible harm." *Freedman*, 255 F.3d at 848; *see also Brown*, 199 F.3d at 456–57.

The plaintiff argues that as a result of the defendant's decision not to transfer him to another SES-level position of employment, he suffers from "lost promotional opportunities, lost pay and other benefits associated with such promotional opportunities, damage to his career and to

his professional and personal reputation, embarrassment, humiliation, and emotional pain." Compl. at 6–7. The plaintiff asserts that these losses stem directly from the defendant's failure to promote him to a position that carries "significantly elevated duties and responsibilities." Pl.'s Opp'n at 17–18. The court, however, agrees with the defendant that it never punished the plaintiff or demoted him to a lesser position. Def.'s Reply at 8–9. In short, the plaintiff only sought a lateral transfer that would sustain his placement as one of the only two SES executives associated with the ENRD, the other being the Chief of the Division. Pl.'s Opp'n Ex. 10 (Candidate Referral Mem.) at 1; Compl. at 4.

The defendant's denial of a lateral transfer within the SES did not create a corresponding decrease in salary or benefits. Mot. for Summ.J. at 18 n. 8; Reply at 8–9. First, the plaintiff suffered no financial detriment by the denial because the plaintiff was already in the SES as the Senior Litigation Counsel. Mot. for Summ.J. at 18 n. 8; Pl.'s Opp'n Ex. 2 (Letter to U.S. Rep. John Dingell) at 2–3. The plaintiff concedes that he suffered no decrease in salary. Pl.'s Statement of Material Facts in Dispute at 2–3; Pl.'s Opp'n Ex. 20 at 1. In addition, the Chief ECS position has the same pay scale as the plaintiff's current position in the SES. Pl.'s Opp'n Ex. 20; Mot. for Summ.J. at 18 n. 8. "Because plaintiff was already in the SES when he applied for the Chief position, he was not financially disadvantaged by not being selected." Mot. for Summ.J. at 18 n. 8. In fact, the defendant granted the plaintiff a pay increase in his capacity as a SES Senior Litigation Counsel in March 1999. Pl.'s Opp'n Ex. 17 at 1. Furthermore, as a SES career appointee, the plaintiff enjoys salary protection based on time restraints that prevent severe reductions in his sala-ry. Pl.'s Opp'n Ex. 25 (DOJ Senior Executive Service Order) at 22.

Second, the plaintiff cannot persuasively argue that he suffered an adverse employment action because of a lost promotional opportunity. Compl. at 6–7. In correspondence about candidates for the ECS Chief position in 1997, the defendant specified that the plaintiff would be subject to a "reassignment" since his current status reflects a SES-level employee, unlike some of the other non-SES candidates who would in fact receive promotions to the plaintiff's level. Pl.'s Opp'n Ex. 10 at 1. The plaintiff's continued status in the SES-level does not lead to the conclusion that he suffered an objectively tangible harm. *Freedman*, 255 F.3d at 848. Indeed, courts have held that even a demotion without a change in pay, benefits, or duties is insufficient to qualify as a materially adverse change. *Kocsis v. Multi–Care Mgt., Inc.*, 97 F.3d 876, 887 (6th Cir.1996).

Third, the plaintiff points to the supposedly elevated managerial duties the ECS Chief position has as being different from his current position. Pl.'s Opp'n at 18. The plaintiff argues that because the ECS Chief position "carried with it significantly elevated supervisory duties and responsibilities," his non-selection constituted an adverse personnel action. *Id.* But the plaintiff fails to meet his burden of proof. As the defendant accurately states, the plaintiff "relies mostly on the unsupported allegation that the position of ECS Chief is more 'elevated' than his current job." Reply at 8. As noted previously, the two positions have the same pay scale. Pl.'s Opp'n Ex. 20; Mot. for Summ.J. at 18 n. 8. In addition, the plaintiff himself acknowledges that in his current position as Senior Litigation Counsel, he has had years of experience supervising other attorneys. Pl.'s Opp'n at 29. This admission actually supports the defendant's point that the

plaintiff's views of the two different positions amounted to his own "subjective interest." Reply at 9. But the D.C. Circuit has emphasized that "[m]ere idiosyncracies [sic] of personal preference are not sufficient to state an injury." *Brown,* 199 F.3d at 457.

Finally, in his complaint, the plaintiff claims that his non-selections caused "damage to his career and to his professional and personal reputation, embarrassment, humiliation, and emotional pain." Compl. at 6–7. The D.C. Circuit has explained, however, that "public humiliation or loss of reputation does not constitute an adverse employment action under Title VII." *Stewart,* 275 F.3d at 1136; *see also Spring v. Sheboygan Area Sch. Dist.,* 865 F.2d 883, 886 (7th Cir.1989) (explaining that public perception was not a condition of employment); *Probst v. Reno,* 2000 WL 1372872, at *12 (N.D.Ill.2000) ("the fact that [the plaintiff] remains employed demonstrates that perception was not a condition of [his] employment."). In this case, the plaintiff continues to work in the ECS division as the Senior Litigation Counsel and remains at the SES employment level. Pl.'s Opp'n at 3. The plaintiff's assertions about damage to his reputation do not constitute an adverse personnel action. *Stewart,* 275 F.3d at 1136.

In sum, the plaintiff's non-selections amounted to denials of lateral transfers that did not have *any* materially adverse consequences. Accordingly, the plaintiff cannot establish a prima-facie case of race discrimination since he failed to show more than "the mere existence of a scintilla of evidence" in support of his claim of an adverse action. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. In addition, the court determines that the plaintiff has not suffered an objectively tangible harm. *Freedman,* 255 F.3d at 848; *Brown,* 199 F.3d at 456–57. Because the plaintiff can-not show that he suffered an adverse employment action, he cannot establish his prima-facie case of disparate treatment based on race discrimination. *Brown,* 199 F.3d at 452. Consequently, since there are no genuine issues of material fact in dispute, "the moving party is entitled to a judgment as a matter of law." FED. R.CIV.P. 56(c); *see also Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. 2548.

■ The court holds that the plaintiff has not established a prima-facie case of race discrimination. Even assuming *arguendo* that the plaintiff had met his initial burden, he would still not survive the defendant's motion for summary judgment. Under the *McDonnell Douglas* framework, this defendant has succeeded in offering its legitimate, non-discriminatory reasons for the plaintiff's non-selections. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. Namely, the defendant submits that the two other people chosen for the ECS Chief positions in 1997/98 and 2000 had superior managerial expertise. Mot. for Summ.J. at 1, 8, 25–26.

Lastly, the burden shifts back to the plaintiff to present sufficient evidence that would allow a jury to infer that the defendant rejected the plaintiff based on his race. *Aka,* 156 F.3d at 1289. The plaintiff fails to meet the requisite showing. First, he fails to demonstrate that his non-selections were race-related. Second, the plaintiff fails to call into question the defendant's legitimate, nondiscriminatory explanation for its decisions in making comparative assessments of the plaintiff's and the chosen candidates' abilities and experience. Third, the record itself demonstrates that the plaintiff's supervisors at the DOJ thought highly enough of the plaintiff to grant him a promotion to the SES-level in 1995 and a salary increase in March 1999. Compl. at 4; Pl.'s Opp'n Ex. 17 at 1. In sum, then, even if the plaintiff

had established his prima-facie case, he still has failed to meet the requisite burden for this case to survive the defendant's motion for summary judgment. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817; *Aka*, 156 F.3d at 1289.

## IV. CONCLUSION

For all these reasons, the court grants the defendant's motion for summary judgment on the claim alleging race discrimination. An order directing the parties in a manner consistent with this Memorandum Opinion is separately and contemporaneously issued this 25 day of July, 2002.

### *ORDER*

#### GRANTING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

For the reasons stated in this court's Memorandum Opinion separately and contemporaneously issued this _____ day of July, 2002, it is

**ORDERED** that the defendant's motion for summary judgment is hereby **GRANTED.**

**SO ORDERED.**