Diedre **BUTLER**, Plaintiff,

v.

John **ASHCROFT**, Attorney General of the United States, et al. Defendants.

No. CIV. 01–68(RJL).

United States District Court, District of Columbia.

Sept. 26, 2003.

Khadijah Rahshidah Ali, Washington, DC, for Diedre D. Butler.

Claire M. Whitaker, U.S. Attorney's Office, Washington, DC, for Janet Reno, John Ashcroft.

**Memorandum Opinion**

LEON, District Judge.

Plaintiff Diedre Butler brings an employment discrimination claim against her employer, the Federal Bureau of Investigation ("FBI"), alleging that the FBI denied her two successive job promotions based on her sex and race. Defendants contend that Ms. Butler failed to exhaust her administrative remedies with regard to the first denied position and has not established a prima facie case of employment discrimination for either the first or second denied positions. Before this court is Defendants' motion for dismissal or in the alternative for summary judgment. The Court finds that although Ms. Butler filed

her initial claim in a timely manner, a reasonable jury could not find that the FBI's reasons for not promoting her are pretext. Accordingly, the Court grants the FBI's motion for summary judgment, finding that even with a time extension for discovery, Butler would be unable to show employment discrimination.

## I. Background

The plaintiff is an African–American female employed in the FBI's National Security Division. During the time period in question, Plaintiff served as a GS–14 supervisor in the NS4 Section where she had been employed since 1995. Pl.'s Compl. at 2–3. Beginning January 1998, due to a reassignment of the existing Unit Chief, Ms. Butler became acting Unit Chief for the NS4B unit, a position that she held for a year. Pl.'s Compl. at 3. On September 14, 1998, Ms. Butler was informed that the FBI had not selected her for an available Unit Chief position within the NS4B unit for which she had applied. A white male had been selected instead for the position.[1]

On September 23, 1998, Ms. Butler met with an EEO counselor. The counselor encouraged her to wait to file a formal discrimination complaint until the FBI completed the hiring process for a second Unit Chief position within the NS4A unit.[2]

On January 6, 1999, Ms. Butler learned that she had not been selected for the second position, which was awarded to a white woman. Ms. Butler continued to act as the NS4B's Unit Chief until William Houghton reported for duty. Ms. Butler instructed Mr. Houghton on how to perform several aspects of the job for which, she alleges, he lacked training and experience. On January 27, 1999, Ms. Butler again contacted the EEOC Counselor with the intent of filing a formal discrimination complaint.

On March 23, 1999, a day after receiving notice of her right to sue from the EEOC, Ms. Butler filed a formal complaint with the EEOC alleging race and sex discrimination by her employer. Pl.'s Compl. at 18.[3] In November 1999 the FBI created the Investigative Services Division ("ISD") and Ms. Butler was selected as acting Unit Chief for the division. Pl.'s Compl. at 19. In June 2000, the position opened for competition. Ms. Butler applied for the position and received the promotion. Pl.'s Compl. at 20.

Ms. Butler brings a claim pursuant to Title VII of the Civil Rights Act of 1964. She asserts that the discriminatory policies employed by the FBI leading to her nonselection for two job positions "deprived her of employment opportunities and otherwise adversely affected her status as an employee because of her race and sex." Pl.'s Compl. at 22. On April 30, 2001, the FBI moved for dismissal or, alternatively, summary judgment. Defendants assert that: (1) Ms. Butler failed to exhaust her administrative remedies by not bringing her initial claim in a timely manner; (2)

---

1. Defendants assert that William Houghton had more supervisory experience than Butler. Defs.' Mot. to Dismiss of for Summ. J. at 14. Butler disputes this claim and asserts that Houghton served as an analyst rather than a Unit Chief. Pl.'s Am. Resp. at 3.

2. Defendants dispute this claim, asserting that "It was the plaintiff who determined not to proceed with her complaint and no one else." Defs.' Reply at 2.

3. A letter from the Equal Employment Opportunity Office of the FBI, dated June 8, 1999, advises Ms. Butler that the processing of her complaint has begun but that it includes only the discrimination allegation pertaining to the second position. The letter included that plaintiff "states that she was also not selected for a Unit Chief position (# 9805181) on September 14, 1998. This allegation cannot be accepted because it is untimely." Pl.'s Ex. 14 at 2.

Ms. Butler is unable to establish a prima facie case for either claim; and (3) even if a prima facie case be established, Ms. Butler cannot prove that Defendants' employment decision was based on pretext.

### III. Analysis

■ The Defendants' argument that Ms. Butler failed to exhaust her administrative remedies by not filing a formal complaint within the 90–day limit imposed by 29 C.F.R. § 1614.105(e) is simply inaccurate. The only requirements imposed by the aggrieved person by the pre-complaint process under Section 1614.105 are that the aggrieved person must initiate contact with a counselor within forty-five days of the alleged incident or personnel action, and that once the counselor has informed the aggrieved person of the right to file a discrimination complaint, the aggrieved person must file his/her complaint within fifteen days thereafter. Ms. Butler initiated contact with the EEOC counselor on September 23, 1998, nine days after she was not selected for the first position on September 14. That the counselor never issued a notice of Ms. Butler's right to file a complaint is no fault of Ms. Butler's. She had no obligation to file a complaint within the specified time period independent of receipt of notice of her right to do so. After hearing of her second nonselection on January 6, 1999, she promptly initiated contact with a counselor on January 27, 1999, twenty-three days after the nonselection. Moreover, when the Counselor did provide notice of the Plaintiff's right to sue on March 22, 1999, Ms. Butler complied with Section 1614.105 by filing her complaint within fifteen days of receiving the notice. Thus, Ms. Butler satisfied her obligation to exhaust her administrative remedies before filing this action.

■ Next, the FBI contends that even if Ms. Butler exhausted her administrative remedies, the case should be dismissed Ms. Butler cannot demonstrate by a preponderance of the evidence that the FBI's nondiscriminatory reasons for hiring other candidates was mere pretext for discrimination. Defs.' Mot. to Dismiss at 10. Ms. Butler counters that until additional discovery takes place she is unable to address many of Defendants' allegations. Pl.'s Am. Resp. at 7. For this reason she states in her response to the defendants' motion that she should have additional time for discovery before the Court rules on the Defendants' motion. The Court disagrees.

■ Plaintiff has had adequate time for discovery both prior to and after the defendants filed their summary judgment motion in this case.[4] The FBI is not re-

---

4. Ms. Butler had substantial time for discovery after the Defendants' filed the motion for summary judgment on May 1, 2001. The plaintiff filed three separate motions for extension of time, in response to the Defendants' motion for summary judgment, on May 16, June 21, and July 20, 2001. All three motions were granted, giving Ms. Butler until August 6, 2001, to respond to Defendants' summary judgment motion. The three additional months granted to Ms. Butler by Judge Lamberth gave her adequate time to conduct discovery, especially when viewed in light of the fact that Ms. Butler filed her complaint on January 12, 2001, almost four full months before the FBI filed the motion for summary judgment on May 1, 2001. With over seven months during which Plaintiff could have conducted discovery she gives no compelling reason for a complete lack thereof. Failure to conduct discovery is not reason enough to provide Ms. Butler more time in which to respond adequately to Defendants' summary judgment motion. *See Ned Chartering v. Republic of Pakistan*, 294 F.3d 148, 151 (D.C.Cir.2002) (finding that a district court has "great latitude in determining how much time is adequate."); *Alexander v. FBI*, 186 F.R.D. 180, 185 (D.D.C.1999) (noting that "[A] request for relief under Rule 56(f) is extremely unlikely to succeed when the party seeking the delay has failed to take advantage of discovery.") (citing Charles Alan Wright,

quired to wait until the end of discovery to file a motion for summary judgment. "The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If a nonmoving party believes the summary judgment is improper, it may "not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." *Raymond v. U.S. Capitol Police Board,* 157 F.Supp.2d 50, 55 (D.D.C.2001). Summary judgment may also be appropriate when discovery is unlikely to establish a prima facie case for any of plaintiff's claims, such as in this case. Although Ms. Butler is able to establish a prima facie case of employment discrimination and shift the burden of proof to the FBI, the FBI offers legitimate reasons for Ms. Butler's nonselection that Ms. Butler is unable to disprove. Thus, for the following reasons, even with more time for discovery, Ms. Butler could not demonstrate to a factfinder that her employer acted in a discriminatory manner.

In evaluation of a claim under Title VII, the Court should apply the test set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Plaintiff must prove that (1) she is a member of a protected class; (2) she applied for and was qualified for the available position; (3) despite her qualifications she was rejected; and (4) either someone not of her protected class filled the position or the position remained vacant and

the employer continued to seek applicants. *Id.* at 208, 93 S.Ct. 1817. The Supreme Court concluded that the burden of establishing a prima facie case of employment discrimination is "not onerous." *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Once the plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant to show that the reasons for the action were legitimate and not motivated by discriminatory intent. If the defendant is able to carry this burden, the plaintiff must establish by a preponderance of the evidence that the reasons offered by the defendant are pretext for intentional discrimination. *See Burdine,* 450 U.S. at 252–53, 101 S.Ct. 1089 (citing *McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. 1817).

 There is no dispute that the Plaintiff has a prima facie case. As an African–American female Ms. Butler is clearly a member of two protected classes. Defs.' Mot. for Sum. J. at 11. Defendants admit that Plaintiff "was qualified for both positions in question." *Id.* Further, it is undisputed that white candidates were selected for both positions. Defs.' Mot. to Dismiss at 11. Therefore, having established a prima facie case of employment discrimination based on race, the burden shifts to the FBI to show legitimate reasons for its employment decisions. Defendants need only "proffer—not prove—a legitimate nondiscriminatory reason for not offering [plaintiff] the ... position." *Cullins v. Citibank,* 2002 U.S. Dist. Lexis 9595 *13 (D.D.C.2002) (quoting *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817). The FBI has done just that by setting forth the superior qualifications of the personnel selected for the two positions.[5] In

---

Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure 2741, at 431 (1998)).

**5.** Defendants assert that Mr. Houghton "had been working in the FBI National Security

addition, one of the Career Board members commented that "he ranked all three candidates closely, but recalls that Plaintiff appeared very nervous during the interview." Defs.' Ex. 5 at 3. Defendants state that "[a]fter a reasoned and objective analysis of the written KSAs and oral interviews of each applicant, both Career Boards determined that plaintiff was not the best candidate ... [T]he selectees for these positions were selected because they had extensive foreign counterintelligence analytical and supervisory experience." Defs.' Mot. to Dismiss at 13. All of these factors amount to a legitimate basis for the FBI's employment decision.

■ Since the Defendants have proffered legitimate reasons for hiring decisions, Ms. Butler must "establish by a preponderance of the evidence that ... [Defendants] proffered explanation is a pretext for racial discrimination." *McDonnell Douglas*, 411 U.S. at 804–05, 93 S.Ct. 1817. Ms. Butler has not done so. When determining whether an employer's reasons for hiring are pretext, the court should consider:

> Whether a jury could infer discrimination from the combination of (1) the plaintiff's prima facie case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its action; and (3) any further evidence of discrimination that may be available to the plaintiff (such as independent evidence of discriminatory statements or attitudes on the part of the employer) or any contrary evidence that may be available to the employer (such as a strong

track record of equal opportunity employment).

*Aka v. Washington Hospital Center*, 156 F.3d 1284, 1289 (D.C.Cir.1998). The D.C. Circuit has further held that "simply casting doubt on the employer's proffered justification does not automatically enable the plaintiff to survive summary judgment." *Stewart v. Ashcroft*, 211 F.Supp.2d 166, 172 (D.D.C.2002). For example, Ms. Butler's allegations that Margaret Buckley, a supervisor "whom plaintiff has heard and known to engage in racial, sexist and otherwise inappropriate comments, was a member of each of the career boards in this case," Pl.'s Am. Compl. at 7, is unavailing because Ms. Buckley was a nonvoting member of the board and even encouraged Ms. Butler to apply for the second position. Pl.'s Am. Compl. at 7. Additionally, Plaintiff's criticism of the procedures followed by the hiring panel during the interview process is similarly unavailing. Even if Ms. Butler could provide that abnormalities occurred, they do not point to a discriminatory motive on the part of the employer. There is no indication that abnormal interview procedures are necessarily evidence of discrimination. "An employers failure 'to follow its own regulations and procedures, alone, may not be sufficient to support' the conclusion that its explanation for the challenged employment action is pretextual." *Fischbach v. District of Columbia Dep't of Corrections*, 86 F.3d 1180, 1183 (D.C.Cir.1996) (quoting *Johnson v. Lehman*, 679 F.2d 918, 922 (D.C.Cir.1982)). While the hiring practices engaged in may indicate inconsis-

Division as an IRS since 1984 ... [H]e received a merit-based promotion, traveled internationally ... developed specialized computer software, acted as a primary drafter of a report utilized by congress ... and completed relevant post-graduate work." Def.'s Ex. 18. Ms. Gregor, the woman hired for the second

position had been an IRS "since approximately 1984 and had been serving as a Supervisory Intelligence Research Specialist ... since 1992. She served as Acting Unit Chief of the unit for prolonged periods of time from 1995–1998." Defs.' Ex. 17.

80

tencies in the process, Ms. Butler could not convince a reasonable jury that such inconsistencies are evidence of discrimination. Thus, Ms. Butler's allegations of irregularities, even if proven, do not indicate discriminatory hiring practices. Indeed, the fact that Ms. Butler was hired for a GS–15 position in June, 2000, further undercuts her position that the earlier nonselections were based on racial discrimination by her employer. For these reasons, the Court grants the FBI's motion for summary judgment.

### III. Order

For the foregoing reasons, it is on this 26th day of September 2003, hereby

**ORDERED** that defendants' motion for summary judgment [# 10] is GRANTED;

**SO ORDERED.**