# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued February 4, 2005          Decided May 24, 2005

No. 04-7063

LINDA ROEBUCK,
APPELLANT

v.

ODIE WASHINGTON, DIRECTOR, D.C. DEPARTMENT OF
CORRECTIONS, ET AL.,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 99cv01564)

———

*Linda M. Correia* argued the cause for appellant. With her on the briefs were *Susan L. Brackshaw* and *Jonathan C. Puth.*

*David A. Hyden*, Assistant Attorney General, Office of Attorney General for the District of Columbia, argued the cause for appellee. With him on the brief were *Robert J. Spagnoletti*, Attorney General, and *Edward E. Schwab*, Deputy Attorney General.

Before: GINSBURG, *Chief Judge*, and HENDERSON and RANDOLPH, *Circuit Judges.*

Opinion for the Court filed by *Chief Judge* GINSBURG.

GINSBURG, *Chief Judge*: Linda Roebuck sued her employer, the District of Columbia Department of Corrections, under Title VII of the Civil Rights Act of 1964, and her supervisor, Larry Corbett, under 42 U.S.C. § 1983, alleging Corbett had sexually harassed her. The jury found Corbett but not the Department liable. The Department prevailed by proving (1) it had "exercised reasonable care to prevent and correct promptly any sexually harassing behavior," and (2) "Roebuck [had] unreasonably failed to take advantage of ... preventive or corrective opportunities provided by the [Department]," Special Verdict at 2; those findings made out an affirmative defense pursuant to *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998), and *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998).

Roebuck appeals, arguing principally that the Department had taken a "tangible employment action" against her and thereby forfeited the *Faragher-Ellerth* affirmative defense. Alternatively, Roebuck argues first that the district court's instruction on the affirmative defense misled the jury about the Department's burden to prove she acted unreasonably in failing to complain earlier and, second, that the Department did not produce evidence sufficient to carry its burden. We affirm the judgment of the district court.

## I. Background

Linda Roebuck began working for the D.C. Department of Corrections in 1986. In 1993 she was assigned to work as an administrative assistant in the Office of the Major at the D.C. Jail. In 1995 Larry Corbett was promoted to the position of Major, making him Roebuck's direct supervisor; soon thereafter, Corbett began sexually harassing her "off and on." In August

1997 Corbett was promoted to Deputy Warden, and later that same month he asked Roebuck to transfer to the Office of the Warden and continue serving as his administrative assistant. Roebuck agreed but when she resumed working for Corbett in September, he resumed harassing her.

In October Corbett asked Roebuck out to dinner and, when she refused, he began to question her about her previous relationship with his brother. In November Corbett's father died and Roebuck reluctantly agreed to have dinner with Corbett in order to console him, but she brought her son along to avoid being alone with Corbett. After dinner they returned to Roebuck's residence, where Corbett invited himself in and remained for over an hour. When Roebuck finally told Corbett to "go home to your wife" and showed him to the door, Corbett unexpectedly grasped Roebuck and tried to kiss her. Roebuck refused, saying, "I told you no, I don't date married men." Corbett left, but the next day at work, he expressed his displeasure by sticking his tongue out at Roebuck.

In mid-December Corbett showed up unannounced at Roebuck's house and asked her to accompany him on an overnight shopping trip to Williamsburg, which invitation Roebuck declined. Sometime before Christmas, Corbett again stopped by Roebuck's house, but Roebuck's son, per her instructions, told Corbett she was asleep.

On Christmas Day Corbett summoned Roebuck to his office and again grabbed her and tried to kiss her. Lieutenant James Clark, who witnessed Corbett's unwanted groping, reported the incident to the Warden that same day. A couple days later, Corbett left a note reading "Sexy" on top of Roebuck's work assignments. When Roebuck asked Corbett about the meaning of the note, Corbett responded, "You, Roebuck," making the shape of an hourglass with his hands.

The next day Corbett warned Roebuck: "Don't let me find out you're taking sides with Lieutenant Clark."

Sometime in January 1998 Corbett told Roebuck she should wear her hair up "because [she] was sexier" that way, and that she should wear pants instead of skirts because her legs were distracting. On January 16 Corbett called Roebuck into his office with what Roebuck characterized as "bedroom music" playing and simply stared at her, saying nothing; when Roebuck asked, "Well, what do you want," Corbett just kept staring. Roebuck eventually left, disgusted, but Corbett immediately called her back to his desk and repeated the silent-staring routine. That was apparently the last straw as far as Roebuck was concerned; on January 21 she complained to Lieutenant Clark of sexual harassment by Corbett.

The next day Roebuck discovered the lock on Corbett's office door had been changed. Another administrative assistant, Violet Hicks, had a key to the new lock, and she let Roebuck into the office to retrieve her assignments.

On February 6 the Warden of the D.C. Jail, Mario Randall, met with Corbett to discuss Roebuck's complaint. Thereafter Randall sent a memorandum up the departmental chain of command recommending that Roebuck be reassigned to the "relief pool," which was by all indications not a desirable transfer. Before Roebuck was ever apprised of the proposed transfer, however, Randall changed his mind, concluding "the action to move her back to the correctional force ... gave the appearance of being retaliatory." On February 10 he instead informed Roebuck she would be switching duties with Violet Hicks. Roebuck said she did not want to make the switch.

The change in her duties never took place because Roebuck went on sick leave for six weeks, during which time

she sought psychological counseling for the stress and anxiety Corbett had caused her. In the meantime Corbett was demoted and transferred to another facility. When Roebuck returned she resumed her old job with a new boss, and her sick leave was restored.

Roebuck later sued both Corbett and the Department. The district court concluded the Department had not taken any "tangible employment action" against Roebuck and therefore could present the affirmative defense to vicarious liability established in *Faragher* and *Ellerth*. The case was tried to a jury, which found Corbett individually liable, pursuant to 42 U.S.C. § 1983, and awarded damages against him in the amount of $5,000. In a special verdict, the jury also found the Department had made out the *Faragher-Ellerth* affirmative defense. Special Verdict at 2. Roebuck moved for judgment as a matter of law, which the district court denied.

## II. Analysis

On appeal Roebuck contends the district court erred in allowing the Department to defend on the ground it had taken no "tangible employment action" against her. In the alternative, Roebuck argues that the district court's instruction to the jury was misleading and contrary to law with respect to the affirmative defense. Finally, Roebuck contends the Department failed to produce legally sufficient evidence to support the jury's finding that Roebuck acted unreasonably in failing earlier to report Corbett's sexual harassment.

## A. Tangible Employment Action

The Supreme Court held in *Faragher* that "when the supervisor's harassment culminates in a tangible employment

action" against the plaintiff employee, the employer is vicariously liable for the harassment. 524 U.S. at 808. In *Ellerth*, decided the same day, the Court elaborated: "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." 524 U.S. at 761. Roebuck argues the Department took three tangible employment actions against her, namely, (1) Corbett changing the locks on his office door; (2) Warden Randall writing and sending up the chain of command a memorandum requesting Roebuck's transfer to the relief pool; and (3) Randall telling Roebuck she would be swapping duties with Violet Hicks.

The district court held, and the Department contends, that Corbett's changing the locks does not amount to a tangible employment action. The only consequence identified by Roebuck was that on one occasion she had to ask Ms. Hicks to open the door to Corbett's office so she could get her work assignments. Even if Roebuck had to get someone to let her in every day from January 22 through February 10 -- upon which the record is silent -- she still fails to make out a tangible employment action because, as the district court stated, she did "not provide [any] evidence that changing the locks in fact interfered with [her] ability to perform her job."

Roebuck argues the district court "incorrectly focused on whether [her] compensation was affected or whether she sufficiently proved the degree of impact that such an action had on her ability to perform her job." According to Roebuck "[t]he focus of the *Faragher/Ellerth* standard of vicarious liability is on the fact of the official action, not on the degree of the impact" it had.

Roebuck's asserted "focus" is far different from that of

the Supreme Court. Indeed, in defining "tangible employment action," the Court could hardly have been more clear that it is not "the fact of the official action," as Roebuck would have it, but its effect upon the plaintiff that matters. *See Ellerth*, 524 U.S. at 761 (tangible employment action entails "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits"). Because Roebuck points to no effect, let alone a significant effect, that Corbett's changing the locks had upon her employment status, her work, or her benefits, we conclude it was not a tangible employment action.

Roebuck next argues that Warden Randall's proposal to transfer her to the relief pool, which he sent up the departmental chain of command, was a tangible employment action. Randall testified that he changed his mind about the transfer and, as Roebuck concedes, the transfer never took place; indeed, Roebuck did not even know about the possibility of being transferred when she left work on sick leave. The proposal therefore had no effect upon Roebuck's employment status, her work, or her benefits. The district court aptly put the matter in context: "the internal machinations of [the Department] are insufficient to constitute a tangible employment action where no aspect of plaintiff's actual employment was altered as a result."

Finally, Roebuck contends the Department took a tangible employment action against her when Warden Randall informed Roebuck she would be switching duties with Violet Hicks. Again as Roebuck acknowledges, in the event her duties never were changed. Even if the transfer were deemed effective when the Warden informed Roebuck of it -- a point upon which we express no opinion -- swapping duties with Violet Hicks, another administrative assistant in the Office of the Warden, would hardly have worked a "significant" change in Roebuck's

employment. The only difference seems to be that Hicks reported to Warden Randall whereas Roebuck reported to Deputy Warden Corbett. As this court explained in *Brown v. Brody*,

> A plaintiff who is made to undertake ... a lateral transfer -- that is, one in which she suffers no diminution in pay or benefits -- does not suffer an actionable injury unless there are some other materially adverse consequences affecting the terms, conditions, or privileges of her employment or her future employment opportunities.

199 F.3d 446, 457 (1999).[*] Although Roebuck did not want to swap duties with Ms. Hicks, she never identified any way in which the change would have made her worse off; as the court made clear in *Brown*, "[m]ere idiosyncracies of personal preference are not sufficient." 199 F.3d at 457.

*Robinson v. Sappington*, 351 F.3d 317 (7th Cir. 2003), upon which Roebuck relies, is not to the contrary. The plaintiff in that case was a secretary for a judge who, she alleged, was sexually harassing her. When the plaintiff complained to the Chief Judge of the district, he proposed to reassign her to a like position with another judge, at the same time advising her the other judge was not at all happy about the transfer, and "her first six months [in the new post] probably would be [such] 'hell'" that it would be in her "best interest to resign." 351 F.3d at 324. Thus, although the plaintiff was ostensibly offered a lateral transfer, the change in that case, unlike the proposed swap of

---

[*] The court in *Brown* assumed, *see id.* at 456-57, and we have no reason in this case to doubt, that a "materially adverse action" in a case alleging a discrete act of discrimination, and a "tangible employment action" in a case such as this, alleging a hostile work environment, are one and the same.

Roebuck's and Hicks' duties, entailed "materially adverse consequences affecting the terms, conditions, or privileges of her employment," *Brown v. Brody*, 199 F.3d at 457; it was therefore a "tangible employment action."

B.  The Instruction to the Jury

Roebuck argues the district court erred in instructing the jury with regard to the second element of the *Faragher-Ellerth* affirmative defense, to wit, the employer's burden of proving "the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Ellerth*, 524 U.S. at 765. As the Supreme Court explained,

> [W]hile proof that an employee failed to fulfill the corresponding obligation of reasonable care to avoid harm is not limited to showing any unreasonable failure to use any complaint procedure provided by the employer, a demonstration of such failure will normally suffice to satisfy the employer's burden under the second element of the defense.

*Id*.  In this case, the district court instructed the jury as follows:

> You must find for the defendant District of Columbia if you find defendant has proved by a preponderance of the evidence first that defendant District of Columbia exercised reasonable care to prevent and correct promptly any sexually harassing behavior; and second, that Roebuck unreasonably failed to take advantage of any preventive or corrective opportunities provided by the District of Columbia to avoid harm.

...

> [P]roof that plaintiff Roebuck did not follow a complaint procedure provided by defendant District of Columbia as employer will ordinarily be enough to establish that plaintiff Roebuck unreasonably failed to take advantage of a corrective opportunity.

Roebuck argues the district court erred when it instructed the jury that the Department could meet its burden with "proof that plaintiff Roebuck did not follow a complaint procedure provided by defendant." The Department had not argued that Roebuck failed to follow its complaint procedure. On the contrary, there was no dispute that on January 21, 1998 Roebuck filed with Lieutenant Clark a complaint against Corbett for sexual harassment. The only issue before the jury was that of timeliness -- or as Roebuck, quoting *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999), succinctly states, "whether 'a reasonable person in [her] place' would have complained earlier."

The court twice instructed the jury, correctly, that the Department had to prove "Roebuck unreasonably failed to take advantage of any preventive or corrective opportunit[y]." The only "unreasonable failure" at issue was Roebuck's failure to complain earlier. The court's further instruction about "proof that plaintiff Roebuck did not follow a complaint procedure provided by defendant" was therefore surplusage; it would better have been omitted, but we see no reason to think the jury could have been confused by the instruction and somehow concluded that Roebuck never complained at all.

C. Sufficiency of the Evidence

Lastly, Roebuck challenges the sufficiency of the

evidence that she unreasonably delayed complaining to her employer. She faces an uphill battle, for this court must affirm if there was evidence in the record from which a jury reasonably could infer that Roebuck failed to exercise due care to avoid the harassment of which she complained. *See Sparshott v. Feld Entertainment Inc*., 311 F.3d 425, 429 (D.C. Cir. 2002).

Recall that Corbett resumed harassing her in October 1997, yet Roebuck did not complain until late January 1998. Roebuck argues here, as she did before the jury, that she delayed in reporting Corbett's sexual harassment in part because she was afraid of reprisal and in part because she was unsure whether the harassment that occurred outside the workplace was covered by the Department's anti-harassment policy. Whether fear and uncertainty made Roebuck's delay in complaining reasonable was for the jury to decide.

As the Department points out, "[t]he jury heard testimony that [Roebuck] had filed as many as ten sexual harassment complaints between 1986 and 1995." Surely that could have led a reasonable jury to discount Roebuck's explanation for delaying.

Upon this record, a reasonable jury certainly could have found in Roebuck's favor, but we cannot say the same jury could not find that Roebuck unreasonably delayed in reporting Corbett's harassment. Therefore Roebuck's challenge to the sufficiency of the evidence fails.

## III. Conclusion

We conclude Roebuck did not suffer a tangible employment action, and the district court did not err materially in instructing the jury concerning her duty of reasonable care. Because the Department put on sufficient evidence for a

reasonable juror to infer that Roebuck in fact failed to exercise due care in avoiding the harm she sustained, the judgment of the district court is

*Affirmed*.