*250 Opinion for the Court filed PER CURIAM.
Opinion concurring in the Judgment filed by Circuit Judge BROWN.
PER CURIAM.
This cause was considered on the record from the United States District Court for the District of Columbia, and was briefed and argued by counsel. It is hereby Ordered and Adjudged that the judgment of the District Court is affirmed.
Throughout 1999, appellant, Ms. Janet Lutkewitte, who is employed by the Federal Bureau of Investigation (“FBI”), was sexually harassed by her supervisor, David Ehemann. During this period, Ehemann engaged in repugnant and reprehensible conduct by harassing Ms. Lutkewitte with unwelcome sexual advances, including forced submission to his sexual demands. Appellant filed suit in the District Court on October 17, 2000, against both Ehe-mann and the Attorney General of the United States in his official capacity, alleging quid pro quo sexual harassment, hostile work environment, and retaliation in violation of, inter alia, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 200Oe et seq. (2000). Ms. Lut-kewitte settled with Ehemann on the eve of trial. The District Court entered judgment for the Government on December 19, 2003, following a jury verdict.
During the course of the trial, Ms. Lut-kewitte asked the trial court to give the following “tangible employment action” instruction to the jury:
If you find that Ehemann sexually harassed the plaintiff, then you must find the FBI liable for that harassment if you find that any of the following is true:
(1)Ehemann used his authority as plaintiffs supervisor at the FBI to compel her attendance at an inspection in New York enabling him to take advantage of her; OR
(2) Ehemanris words or conduct would have communicated to a reasonable person in the Plaintiffs position that she would suffer negative job consequences if she did not submit to his sexual demands; OR
(3) Ehemann gave Plaintiff certain favorable job benefits because she submitted to his sexual demands.
Joint Appendix (“J.A.”) 254-55 (footnotes omitted). The trial judge, however, declined to instruct the jury to consider whether Ehemanris sexual harassment of Ms. Lutkewitte culminated in a tangible employment action.
On a Special Verdict Form, the jury found that (1) appellant had proven a hostile work environment, (2) the FBI had proven that it exercised reasonable care to prevent any sexually harassing behavior on the part of Ehemann, (3) the FBI had proven that it exercised reasonable care to promptly correct any sexually harassing behavior by Ehemann, and (4) the FBI had proven that Ms. Lutkewitte unreasonably failed to take advantage of the preventive and corrective opportunities provided her, or that she otherwise unreasonably failed to avoid harm. Id. at 325. The jury thus entered a verdict for appel-lee on the claim of hostile work environment sexual harassment. Id. The jury also entered a verdict for appellee on the claim of retaliation. Id. at 326.
In Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998), and Faragher v. City of Boca Raton, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998), the Supreme Court “delineate[d] two categories of hostile work environment claims: (1) harassment that ‘culminates in a tangible employment action,’ for which employers are *251 strictly liable, and (2) harassment that takes place in the absence of a tangible employment action, to which employers may assert an affirmative defense.” Pa. State Police v. Suders, 542 U.S. 129, 143, 124 S.Ct. 2342, 159 L.Ed.2d 204 (2004) (quoting Ellerth, 524 U.S. at 765, 118 S.Ct. 2257, and citing Faragher, 524 U.S. at 807-08, 118 S.Ct. 2275). In explaining when an employer is subject to vicarious and strict liability to a victimized employee for an actionable hostile environment created by a supervisor, the Court offered the following guidance:
At the outset, we can identify a class of cases where, beyond question, more than the mere existence of the employment relation aids in commission of the harassment: when a supervisor takes a tangible employment action against the subordinate. Every Federal Court of Appeals to have considered the question has found vicarious liability when a discriminatory act results in a tangible employment action.
... A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.
When a supervisor makes a tangible employment decision, there is assurance the injury could not have been inflicted absent the agency relation. A tangible employment action in most cases inflicts direct economic harm. As a general proposition, only a supervisor, or other person acting with the authority of the company, can cause this sort of injury.
In order to accommodate the agency principles of vicarious liability for harm caused by misuse of supervisory authority, as well as Title VII’s equally basic policies of encouraging forethought by employers and saving action by objecting employees, we adopt the following holding in this case and in Faragher v. Boca Raton .... An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages.... The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.... No affirmative defense is available, however, when the supervisor’s harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment.
Ellerth, 524 U.S. at 760-62, 764-65, 118 S.Ct. 2257.
On appeal, appellant claims that the District Court “committed reversible error when it failed to give the jury a tangible employment action instruction permitting it to find that the FBI was strictly liable for Ehemann’s sexual harassment of Lutkewitte.” Br. for Appellant at 16. In advancing this claim, Ms. Lutkewitte asserts that Faragher and Ellerth “compel the conclusion that a ‘tangible employment action’ occurs when a subordinate is coerced into submitting to a supervisor’s sexual demands for fear of losing her job or otherwise being penalized *252 with respect to the terms and conditions of her employment.” Id. at 17. On this reading of the case law, she contends that the District Court was obliged to find, as a matter of law, that “Ehemann’s sexual harassment culminated in a tangible employment action thereby rendering the FBI strictly liable,” id. at 18, or at least to submit the question to the jury, id. at 16-18. Under this view, Ms. Lutkewitte must produce record evidence that her job or significant employment benefits were conditioned on her sexual submission. See Holly D. v. Cal. Tech., 339 F.3d 1158, 1174 (9th Cir.2003); Jin v. Metro. Life Ins. Co., 310 F.3d 84, 98 (2d Cir.2002). Without ruling on the validity of Ms. Lutkewitte’s legal theory, we reject both of her contentions as the record before us contains no such evidence.
We reject appellant’s first two proposed instructions out of hand. Ehemann’s directive to appellant that she come to New York where she may have been more vulnerable to his advances was not a tangible employment action. While his order may have conditioned appellant’s job on her attending the New York conference, it did not condition either her job or benefits on submission to Ehemann’s subsequent advances. As for appellant’s claim that she feared losing her job if she did not submit, there is insufficient evidence to justify considering her submission itself a tangible employment action. Appellant offered nothing to suggest that Ehemann implicitly or explicitly conditioned her continued employment on her acquiescence to his sexual overtures.
Appellant’s brief principally focuses on her contention that her ability to receive job-related benefits was conditioned on her submission to Ehemann’s demands. At trial, appellant attempted to show both that she received job benefits and advancements and that those benefits and advancements were conditioned on her sexual submission to Ehemann. Specifically, appellant’s brief contends that, “shortly after [appellant] acquiesced to his advances, Ehemann approved and paid for unlimited overtime work totaling approximately $23,000, payments he had previously refused to authorize; he obtained a brand new government car for her use[;] .... [and] during the period when he was sexually imposing himself on her on a daily basis, he took tangible steps to promote [appellant] by expanding her staff and supervisory responsibilities.” Br. for Appellant at 29-30. The record, however, is devoid of any evidence to support the existence of a “tangible employment action,” and nowhere indicates that any of the job benefits she received were conditioned on her sexual submission to Ehemann.
First, appellant’s assertion that her receipt of a “brand new” car in 1999 was evidence of a tangible employment action is specious. Ms. Lutkewitte already had a take-home car, Trial Tr. at 89, (12/16/03), J.A. 99, so a new one created no significant change in her ability to effectively perform her job duties or on the conditions of her employment and, therefore, was not a “tangible” benefit. See Ellerth, 524 U.S. at 761, 118 S.Ct. 2257 (requiring tangible employment actions “constitute a significant change in employment status such as ... a significant change in benefits”); Roebuck v. Washington, 408 F.3d 790, 793 (D.C.Cir.2005) (requiring tangible employment actions have a “significant effect” on a plaintiffs employment status, work, or benefits). In addition, appellant’s brief contends that Ehemann repeatedly denied her rightful access to her original take-home vehicle, see Br. for Appellant at 4, but nothing presented at trial confirms this claim. Ms. Lutkewitte never asserted at trial that Ehemann had previously improperly denied her a car. In *253 deed, Government witness Edward Shu-bert, the assistant special agent in charge of the administrative services division of the FBI at the time, testified that take-home vehicles were assigned “based on the needs of the FBI, in this ease, the needs of the Washington field office.” Trial Tr. at 107 (12/17/03), J.A. 146. Appellant therefore presented no evidence remotely suggesting that Ehemann’s approval of her access to a new car was conditioned on her sexual acquiescence.
Appellant’s claim that Ehemann allegedly took “tangible steps” to put her in a position to receive a promotion proves nothing. For one thing, there is no evidence in the record to indicate that appellant was ever promoted. See id. at 31, J.A. 68. Furthermore, in the context of appellant’s claim, the two relevant actions allegedly taken by Ehemann — his effort to obtain a GS-14 position description for appellant and his oversight of the augmentation of appellant’s staff — simply do not rise to the level of “tangible employment actions” under Faragher and Ellerth. Ms. Lutkewitte asserted, but never submitted any admissible evidence to prove, that staff augmentation was an important step toward promotion, and never argued that the expansion of her staff led to reduced workload or that increased supervisory authority alone was a tangible benefit. Nothing here therefore indicates that Ehe-mann’s behavior culminated in the actions condemned by Faragher and Ellerth.
Finally, in her brief to this court, appellant claims that,
throughout the period Ehemann supervised [appellant], he denied authorization for virtually all of the overtime she worked to complete her assigned duties. This changed as Ehemann began to impose himself sexually on [appellant] and ... starting at the end of 1998 Ehemann approved virtually all of the overtime [appellant] claimed.
Br. for Appellant at 11 (emphasis omitted); see also Trial Tr. at 73 (12/15/03), J.A. 44 (appellant asserting that in the “last half of 1998” she was granted increased access to overtime pay). Both before the District Court and in her appellate brief, however, Ms. Lutkewitte relies on the temporal proximity of her increased overtime pay and her submission to Ehemann in January 1999 to establish that Ehemann conditioned her pay on her acquiescence. Trial Tr. at 59-60 (12/18/03), J.A. 211-12 (arguing that Ms. Lutkewitte demonstrated conditioning based on Ehemann’s conveyance of employment benefits “contemporaneously with or very shortly after” Ms. Lutkewitte’s sexual acquiescence in January 1999); Br. for Appellant at 29 (same). Because any alleged increased access to overtime pay began before her submission to Ehe-mann’s advances in January 1999, Ms. Lutkewitte failed to offer adequate evidence of causation to warrant a tangible employment action instruction on this claim.
The record thus offers nothing to support appellant’s tangible employment action claim. It neither suggests that appellant received benefits that qualify as tangible employment actions, nor otherwise demonstrates that benefits were conditioned on appellant’s sexual submission. There is no evidence anywhere in the record to support appellant’s assertion that Ehemann implicitly threatened her with a loss of job, demotion, or other tangible employment action if she declined to submit to his advances. Ehemann’s harassing conduct was unspeakably offensive and repulsive, but the coercion that is inherent in a supervisor-employee relationship, without more, is not enough upon which to hold an employer strictly liable for a supervisor’s sexual harassment. Ellerth, 524 U.S. *254 at 760, 118 S.Ct. 2257; Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 72, 106 S.Ct. 2899, 91 L.Ed.2d 49 (1986).
Because there is no evidence of a tangible employment action, we agree with the District Court that no reasonable jury could find that appellant’s receipt of job benefits was the result of her sexual submission. We find no need, and indeed think it improper, to address larger questions regarding the extent to which Faragher and Ellerth are applicable in the “submission” context. The Supreme Court has not addressed whether an employer can be held strictly liable when an employee submits to her supervisor’s sexual demands because she reasonably believes that her benefits or continued employment are conditioned upon her acquiescence, although the Second and Ninth Circuits have addressed these issues. See Holly D., 339 F.3d at 1169 (finding that Faragher and Ellerth apply in the submission context); Jin, 310 F.3d at 94 (same). But because all of Ms. Lutkewitte’s claims fail based on factors this court has already considered — either on the significance of the employment action taken or on causation — and because the government challenges her claims only on these grounds, we need not decide the novel legal questions raised by Ms. Lutkewitte’s requested instructions: whether benefits can constitute tangible employment actions or whether submission in the face of quid pro quo harassment itself constitutes a tangible employment action. See Br. for Appellee at 20 (“At no time has appellee argued that a tangible employment action has to be adverse or that a threat has to be explicit. Rather, appellee argues that there must be some evidence that the tangible employment action is conditioned upon un-welcomed sexual activity.”). This court should decide these important questions only when the facts the plaintiff presents demand their resolution.
The District Court did not issue an opinion in this case and the parties did not squarely address these larger issues in their briefs or in arguments to this court. We therefore believe that it would be a mistake “to address far-reaching questions on which we [might] disagree, when they are wholly unnecessary to the disposition of the case.” PDK Labs., Inc. v. DEA, 362 F.3d 786, 809-10 (D.C.Cir.2004) (Roberts, J., concurring). As Justice Frankfurter once put it: “These are perplexing questions. Their difficulty admonishes us to observe the wise limitations on our function and to confine ourselves to deciding only what is necessary to the disposition of the immediate case.” Whitehouse v. Ill. Cent. R.R. Co., 349 U.S. 366, 372-73, 75 S.Ct. 845, 99 L.Ed. 1155 (1955).
In sum, we hold that, on the record here, the District Court did not err in declining to give the jury a tangible employment action instruction or in refusing to grant appellant a judgment as a matter of law on her claim of strict liability.