Samuel E. FORKKIO, Appellant,

v.

Donald E. POWELL, in his capacity as Chairman, Federal Deposit Insurance Corporation, and Federal Deposit Insurance Corporation, Appellees.

No. 01–5080.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 3, 2002.

Decided Oct. 18, 2002.

Janet A. Vecchia argued the cause and filed the briefs for appellant.

J. Scott Watson, Counsel, Federal Deposit Insurance Corporation, argued the cause for appellees. Colleen J. Boles, Senior Counsel, and Jaclyn C. Taner, Counsel, Federal Deposit Insurance Corporation, were on the brief. Ann S. DuRoss, Assistant General Counsel, and Kathryn R. Norcross, Counsel, Federal Deposit Insurance Corporation, entered appearances.

Before: GINSBURG, Chief Judge; SENTELLE and RANDOLPH, Circuit Judges.

Opinion for the Court filed by Circuit Judge RANDOLPH.

RANDOLPH, Circuit Judge:

This appeal from an order granting summary judgment in favor of the defendant calls upon us once again to determine whether the plaintiff, who alleged employment discrimination and retaliation, suffered from an adverse personnel action. *See Brown v. Brody,* 199 F.3d 446, 452 (D.C.Cir.1999).

Samuel E. Forkkio began working for the Federal Deposit Insurance Corporation (FDIC) in 1989 in its Division of Finance. He started as a unit chief at a pay grade of 14. In August 1993, he received a temporary promotion, authorized under 5 C.F.R. § 335.102(f), to the position of Chief, Accounting and Tax Policy Section, a Grade 15 position. His temporary promotion, originally set to expire on August 7, 1994, was extended until March 30, 1996, and then until January 4, 1997. At the time, the Finance Division was organized into units grouped under sections in separate branches. Branch heads reported to the Director of the Division.

Forkkio's responsibilities as section chief were to review and issue accounting and tax policies for the FDIC and to perform various administrative functions, including supervising the section's staff, filling out staff evaluations, and managing the section's workload. According to 1995 evaluations of his performance, he did excellent work, receiving 1's and 2's on a 5–point scale in all skill categories. In June 1996, the Division of Finance reorganized. Nu-

merous FDIC employees had staffed the Resolution Trust Corporation upon its creation in 1989, *see* 12 U.S.C. § 1441a(b)(8)(A), (B); when the agency was dissolved in 1995, *see id.* § 1441a(m)(1), (3), some of the employees returned to the FDIC. The reorganization added a layer of executives between the branch heads and the Director, reducing the number of those directly reporting to the Director. Various sections and units were renamed or shifted to different areas.

Just before the reorganization, approximately seven section chiefs, of whom Forkkio was the only African American, held temporary Grade 15 positions. In the reorganization, Forkkio's section was eliminated because its workload had declined. His section was added to another section within the Division, and its employees were reorganized into a "unit" within the other section. Forkkio thereby lost his temporary section chief position. Meanwhile, all of the sections supervised by white section chiefs on temporary Grade 15 promotions continued to exist. Forkkio was the only temporary section chief in the Division who lost his position.

Forkkio's working conditions remained the same in several important respects. His salary was not reduced; in fact, it increased in August 1996, after the reorganization. There is no allegation that his benefits were reduced. He retained his temporary pay grade of 15, which was not set to expire until January 4, 1997. His responsibilities in his new position were substantially the same as before the reorganization. In fact, his work in the accounting and tax policy area increased. He was given additional functions related to tax operations. He continued to supervise members of his former staff, and additional staff were assigned to him.

There were some changes in his situation. One unit chief whom he had former-ly supervised was transferred to another section. The section chief he now reported to was a former colleague, and an African American. He no longer attended weekly Finance Division management meetings or received emails, memoranda, or other communications sent to management officials about Division business. In contrast, all of the other temporary section chiefs continued to attend the weekly management meetings and to receive all communications regarding Division management.

Forkkio filed a complaint of discrimination with the Equal Employment Opportunity Commission (EEOC) in August 1996. In October and November 1996, Division management officials competitively posted all the permanent section chief positions. Forkkio was qualified and applied for several of them, but was not interviewed for any. All the other temporary grade 15 section chiefs received promotions to permanent grade 15 positions.

Later, Finance Division officials decided to reinstate the Accounting and Tax Policy Section. The FDIC posted the section chief position as a temporary Grade 15 position on December 20, 1996. It was the only section chief position in the Division posted as a temporary position. Forkkio did not apply.

On January 4, 1997, when Forkkio's temporary Grade 15 promotion expired, he reverted to a permanent Grade 14 position. As part of the reversion, he received the title of Senior Accountant, a staff position below unit chief. Despite the changes in his grade and title, Forkkio's pay was not reduced. When he reverted to Grade 14 his pay increased. He also continued to perform the same work.

On February 11, 1997, the FDIC reposted the position of Chief, Accounting and Tax Policy Section, as a permanent Grade 15 position. Pending the selection of a permanent section chief, Forkkio was

asked and agreed to serve as acting section chief. ·He applied for the permanent position and was promoted to it on April 13; 1997.

As acting and then permanent section chief, Forkkio began reporting to Russell Cherry, an FDIC manager. Forkkio found several of Cherry's actions in 1996 and 1997 offensive. Before becoming Forkkio's supervisor, Cherry discussed the functions of Forkkio's section with a member of Forkkio's staff instead of with him. After becoming Forkkio's supervisor, Cherry sent Forkkio a memorandum congratulating him on his promotion and e-mails requesting updates on various projects, which Forkkio perceived as criticism. Cherry also made personnel decisions about Forkkio's staff without consulting him (*e.g.*, transferring members of Forkkio's section to other work groups, posting a vacancy for a job opening in his section, and re-interviewing candidates Forkkio had already interviewed). Based on these incidents, Forkkio filed three more complaints with the EEOC, in May, July, and October 1997.

Forkkio claims the FDIC discriminated against him in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, when it deprived him of his section chief position during the reorganization. He also claims, based on the expiration of his temporary promotion, the assignment of Cherry as his supervisor, and Cherry's supposedly offensive actions, that the FDIC and Cherry unlawfully retaliated against him for his August 1996 complaint to the EEOC. In a careful opinion, Judge Huvelle held that Forkkio had not established a prima facie case of either discrimination or retaliation and granted summary judgment for the FDIC.

*Forkkio v. Tanoue,* 131 F.Supp.2d 36, 37 (D.D.C.2001).

In the district court's view, Forkkio had established neither an adverse employment action nor an inference of discrimination. 131 F.Supp.2d at 44. Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment," 42 U.S.C. § 2000e–2(a)(1), or "to limit, segregate, or classify his employees ... in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee," 42 U.S.C. § 2000e–2(a)(2), based on a protected characteristic. To state a prima facie case of disparate treatment discrimination under these provisions, the plaintiff must establish that (1) he is a member of a protected class, (2) he suffered an adverse employment action, and (3) the unfavorable action gives rise to an inference of discrimination (that is, an inference that his employer took the action because of his membership in the protected class). *Brown v. Brody,* 199 F.3d 446, 452 (D.C.Cir.1999).

▮ Actions short of an outright firing can be adverse within the meaning of Title VII, but not all lesser actions by employers count. As we wrote in *Brown,* 199 F.3d at 457, "[m]ere idiosyncracies of personal preference are not sufficient to state an injury."[1] *See Williams v. Bristol–Myers Squibb Co.,* 85 F.3d 270, 274 (7th Cir.1996). Purely subjective injuries, such as dissatisfaction with a reassignment, *see Brown,* 199 F.3d at 457, or public humiliation or loss of reputation, *see Stewart v. Evans,* 275 F.3d 1126, 1136 (D.C.Cir.2002),

1. *Stewart v. Ashcroft,* 211 F.Supp.2d 166 (D.D.C.2002), quoted this passage, but added "[sic]" after "idiosyncracies." *Id.* at 175. This seems to assume that the word must be spelled "idiosyncrasy," but "idiosyncracy" is also an accepted spelling. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1123 (1986).

are not adverse actions. Therefore Forkkio could not establish an adverse action on the basis that the reassignment deprived him of prestige.

■ In contrast with purely subjective harms, "reassignment with significantly different responsibilities, or ... a significant change in benefits" generally indicates an adverse action. *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 761, 118 S.Ct. 2257, 2268, 141 L.Ed.2d 633 (1998). Relying on these two factors, we announced in *Brown*: an employee suffers an adverse employment action if he experiences materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm. *Brown,* 199 F.3d at 457.

■ As we have mentioned, the reorganization did not affect Forkkio's pay or benefits. He suffered no loss of pay after his June 1996 change from section chief to unit chief; his pay increased shortly after the reorganization. He did not allege that his benefits changed. He retained his temporary Grade 15 promotion. Forkkio's claim of an adverse employment action must therefore rest on a significant change in his job responsibilities. *See, e.g., Freedman v. MCI Telecomm. Corp.,* 255 F.3d 840, 848 (D.C.Cir.2001). As the district court recognized, 131 F.Supp.2d at 39, Forkkio's substantive responsibilities were not reduced: he was given additional functions to perform; he continued to supervise his former staff members; and he was given additional staff. That he no longer attended management meetings or received management-related e-mails and other communications during the several months before his reappointment as section chief appears to us, as it did to the district court, 131 F.Supp.2d at 40, not sufficiently significant to amount to "materially adverse consequences." *Brown,* 199

F.3d at 457. Forkkio's former position as a section chief was temporary. Nothing in his Statement of Genuine Issues and Material Facts in Dispute indicates that while holding that position, he played any substantial role in managing the Division of Finance above and beyond his activities in supervising the people in his section, an aspect of his employment that did not change upon reorganization.

Forkkio also argues that the change in his position reduced his ability to complete his job satisfactorily because he lost a unit chief and because his new supervisor lacked expertise in his area. No such claim was included in his statement of genuine issues and the district court, after reviewing the record, concluded that "[t]here is simply no evidence that after the reorganization plaintiff was somehow hampered in his ability to do his job." 131 F.Supp.2d at 41.

We therefore agree with Judge Huvelle that Forkkio "failed to provide any evidence, beyond his conclusory assertions of loss of prestige, of any adverse consequence to his position or future career, especially in light of his promotion to a permanent grade 15 section chief position less than one year later." *Id.* at 41–42.

■ Forkkio's remaining claim is one of retaliation under another provision of Title VII, which makes it unlawful for an employer "to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge ... under this subchapter." 42 U.S.C. § 2000e–3(a). To state a prima facie case of retaliation under this provision, the plaintiff must establish that (1) he engaged in a statutorily protected activity, (2) the employer took an adverse personnel action, and (3) a causal connection existed between the two. *Brown,* 199 F.3d at 452. Forkkio's filing

of complaints with the EEOC was protected activity, but again he has not shown an adverse action. He claims that several incidents were retaliatory adverse actions: (1) his January 1997 reversion from Grade 15 to a Grade 14 Senior Accountant position, (2) the placement of Cherry as Forkkio's supervisor, and (3) Cherry's alleged undermining of Forkkio's authority in 1996 and 1997.

None of these rises to the level of an adverse action. The January 1997 reversion resulted from the automatic expiration of a temporary promotion. It did not cause a reduction in Forkkio's pay, benefits, job responsibilities, or any other substantial change in working conditions that might support finding an adverse action under *Brown*. Cherry's supervision of Forkkio may have caused him subjective injury, but it did not objectively harm his working conditions or future employment prospects.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R.CIV.P. 56(c). Because Forkkio failed to establish an adverse action on either his discrimination claim or his retaliation claim, the order granting summary judgment is affirmed.

*So ordered.*