# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued October 13, 2009          Decided December 29, 2009

No. 08-5431

LONI CZEKALSKI,
APPELLANT

v.

RAYMOND L. LAHOOD, SECRETARY,
DEPARTMENT OF TRANSPORTATION,
APPELLEE

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:02-cv-01403)

---

*Ellen K. Renaud* argued the cause for the appellant. *David H. Shapiro* and *Richard L. Swick* were on brief.

*Darrell C. Valdez*, Assistant United States Attorney, argued the cause for the appellee. *R. Craig Lawrence*, Assistant United States Attorney, was on brief.

Before: GINSBURG and HENDERSON, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: Loni Czekalski sued the Department of Transportation (DOT), alleging that her supervisor at the Federal Aviation

Administration (FAA) discriminated against her on the basis of sex by reassigning her to an inferior position. Czekalski's claim went to trial and the jury found for the DOT. Czekalski now appeals the jury verdict as well as the district court's denial of her motion for a new trial. We affirm.

I.

Czekalski started working at the FAA in 1970. By 1995 she had risen to Director of the Office of Communications, Navigation, and Surveillance Systems—a Senior Executive Service (SES) position. According to Czekalski, that position supervised 269 federal employees and approximately 500 contractors, oversaw 96 programs and managed a budget of over $300 million. In June 1997, George Donohue—the FAA's Associate Administrator for Research and Acquisitions—reassigned Czekalski to the Office of Information Technology, where she was to serve as Program Manager for the Year 2000 (Y2K) Project. According to Czekalski, the new position supervised four federal employees and four contractors, had no budget and reported to one of her former peers.

Donohue explained his reasons for the reassignment in a memorandum to Czekalski dated June 12, 1997. Pl.'s Trial Ex. 1. He cited, *inter alia*, "fail[ure] to provide . . . direction and support," "allowing [a] program to languish" and a general lack of "leadership qualities." *Id.* Despite these criticisms, Donohue assured Czekalski that the "reassignment is a lateral move involving no loss of pay or SES status." *Id.* Donohue said the move reflected his belief that Czekalski's "background and technical knowledge could be of substantial assistance" to the Y2K Project. *Id.*

Czekalski took early retirement at the end of 1997 after occupying her new position for only six months. According to multiple trial witnesses, the position proved vital. Czekalski herself acknowledged that it became a highly visible position,

entailing contact and coordination with other agencies, the FAA Administrator and the Congress. Trial Tr. 57-60 (Nov. 8, 2007). One FAA employee described it as "probably . . . the single most significant office in the entire agency" and noted that the office-holder "was interviewed by everything; Wall Street Journal, New York Times; every magazine; every government publication." Trial Tr. 36-37 (Nov. 15, 2007). He explained that the position "had huge visibility because everyone was concerned about what was going to happen with aviation. No one wanted an airplane dropping on their house . . . at the stroke of midnight on 2000." *Id.* at 37.

Czekalski filed this lawsuit in July 2002, after exhausting her administrative remedies. *See Czekalski v. Peters*, 475 F.3d 360, 362 (D.C. Cir. 2007) (*Czekalski I*). She alleged that her reassignment constituted sex discrimination in violation of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. §§ 2000e *et seq*. In April 2005, the magistrate judge[1] granted summary judgment to the DOT on the ground that Czekalski "cannot make out a prima facie case of discrimination."[2] *Czekalski v. Sec'y of Transp.*, C.A. No. 02-1403, 2005 WL 975679, at *12 (D.D.C. Apr. 21, 2005). We reversed, concluding that a reasonable juror could find that she had suffered an adverse employment action and could infer that the reason for the action was discrimination. *Czekalski I*, 475 F.3d at 365, 369.

---

[1]Both parties consented to disposition of Czekalski's claim by a United States magistrate judge. *See* 28 U.S.C. § 636(c).

[2]"A plaintiff 'makes out a prima facie case of disparate-treatment discrimination by establishing that: (1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination.'" *Czekalski I*, 475 F.3d at 364 (quoting *George v. Leavitt*, 407 F.3d 405, 412 (D.C. Cir. 2005)) (internal quotation omitted).

The parties tried the case before a jury for ten days in November 2007. At the close of evidence and after arguments the magistrate judge instructed the jury as to the relevant law and provided it with a written version of the charge, including the applicable standard for determining an adverse employment action. The jury found for the DOT. It returned a special verdict form stating that Czekalski had not "proved by a preponderance of the evidence that she suffered an adverse employment action as a result of her reassignment." Verdict Form, *Czekalski v. Sec'y of Transp.*, C.A. No. 02-1403 (D.D.C. Nov. 20, 2007). Czekalski moved for a new trial on the grounds that "the jury's verdict was against the weight of the evidence" and "the Court deprived Plaintiff of a fair and impartial trial." Pl.'s Mot. for New Trial, *Czekalski v. Sec'y of Transp.*, C.A. No. 02-1403, at 3 (D.D.C. Dec. 26, 2007). The magistrate judge denied the motion. This appeal timely followed.

## II.

Czekalski argues that the magistrate judge committed reversible error in (1) instructing the jury on the standard to be used in determining an adverse employment action *vel non* under Title VII; (2) not instructing the jury that it could draw an adverse inference from DOT's failure to produce certain evidence; (3) denying her motion for a new trial and (4) making biased statements and rulings that deprived her of a "fair and impartial" trial.

### A. Jury Instructions Regarding Adverse Employment Action

"An alleged failure to submit a proper jury instruction is a question of law subject to *de novo* review; the choice of the language to be used in a particular instruction, however, is reviewed only for abuse of discretion." *Joy v. Bell Helicopter Textron, Inc.*, 999 F.2d 549, 556 (D.C. Cir. 1993). The harmless error rule applies; to warrant reversal, "'the error must have been prejudicial: It must have affected the outcome of the

district court proceedings.'" *Muldrow ex rel. Estate of Muldrow v. Re-Direct, Inc.*, 493 F.3d 160, 168 (D.C. Cir. 2007) (quoting *United States v. Olano*, 507 U.S. 725, 734 (1993)); *see* Fed. R. Civ. P. 61.

Czekalski contends that the magistrate judge improperly instructed the jury on what constitutes an adverse employment action under Title VII. Jury instructions are proper if, "when viewed as a whole, 'they fairly present the applicable legal principles and standards.'" *Joy*, 999 F.2d at 556 (quoting *EEOC v. Atl. Cmty. Sch. Dist.*, 879 F.2d 434, 436 (8th Cir. 1989)). This circuit's standard for an adverse employment action is well-established: "[A]n employee suffers an adverse employment action if he experiences materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm." *Forkkio v. Powell*, 306 F.3d 1127, 1131 (D.C. Cir. 2002). The magistrate judge relayed this standard in the third paragraph of the relevant instructions.[3] Thus, the jury had the guidance necessary to

---

[3]The relevant instructions, in their entirety, read:

> Next, you are instructed that the burden is on the Plaintiff to show that she suffered an adverse employment action. The Civil Rights Act does not apply and is not intended to apply to every workplace reassignment. An employer's decision that does not have a tangible effect on an employee does not qualify as an adverse action, even if the employee considers it insulting or offensive.

> Moreover, changes in duties or working conditions, including reassignments that do not have a tangible effect on the terms, conditions or privileges of employment are not adverse actions. Even if an action is contrary to an employee's personal preferences, that does not make it an adverse employment action. However, it is for you to

render its special verdict as to whether Czekalski suffered an adverse employment action.

It is true that the second paragraph of the charge wants for clarity. Most troubling is its first sentence, which, as punctuated in the transcript included in the Joint Appendix, reduces to the proposition that "changes in duties and working conditions . . . are not adverse actions." *See* Trial Tr. at 182. But we believe this perceived defect is simply the result of faulty punctuation—a mere comma corrects it[4]—and we therefore decline to read the instruction in such a manner as to give it a commonsensically false meaning. While the record does not contain the written charge that was sent to the jury, assuming that version has the same punctuation as the one we are reviewing, we are nevertheless assured that the jury did not misread its meaning, especially given its position in the charge. Indeed, regardless of its punctuation, the sentence is largely superfluous. As noted above, it is followed by a paragraph that lays out the adverse employment action standard as articulated

---

> determine whether the reassignment of the Plaintiff to the Year 2000 Program was a reassignment to a position with significantly different responsibilities.
>
> An employee suffers an adverse employment action if she experiences materially adverse consequences affecting the terms, conditions or privileges of employment such that you find objectively tangible harm. Whether a particular assignment of duties constitutes an adverse action, for purposes of Title VII, is a jury question, that is, one for you to determine.

Trial Tr. 181-82 (Nov. 16, 2007).

[4]The sentence, properly punctuated, would read: "Moreover, changes in duties or working conditions, including reassignments, that do not have a tangible effect on the terms, conditions or privileges of employment are not adverse actions."

in *Forkkio*. Further, the preceding sentence conveys much the same meaning, even though it refers to "[a]n employer's decision" instead of "changes in duties and working conditions" and it emphasizes the irrelevance of an employee's subjective reaction in place of reassignments *per se*.

Perhaps the magistrate judge could have focused more attention on what an adverse employment action *is* as opposed to what an adverse employment action is *not*. The first four sentences describing an adverse action are framed in the negative. Trial Tr. 181-82 (Nov. 16, 2007). Not until the end of the second paragraph does the instruction begin to equip the jury with a positive description of an adverse employment action. *Id.* Nevertheless, we believe that a juror who both heard and read the instructions in their entirety—especially the concluding paragraph—would have had a correct understanding of what constitutes an adverse employment action. "[W]hen viewed as a whole," therefore, the instructions "'fairly present the applicable legal principles and standards.'" *Joy*, 999 F.2d at 556 (quoting *Atl. Cmty. Sch. Dist.*, 879 F.2d at 436).

Czekalski also argues that the magistrate judge erred in failing to include certain alternate articulations of the adverse employment action standard.[5] She expressly relies on the concurring opinion in *Lutkewitte v. Gonzales*, which states that "[a] party is entitled to an instruction on any legal theory that has a basis in the law and the record." 436 F.3d 248, 255 (D.C. Cir. 2006) (Brown, J., concurring) (citing *Joy*, 999 F.2d at 556). Her argument ignores the fact that "'[a]s long as a district judge's instructions are legally correct . . . he is not required to give them in any particular language.'" *Joy*, 999 F.2d at 556

---

[5]Czekalski asserts that the magistrate judge should have instructed "the jury that if it found that Czekalski's duties dramatically declined in quality or quantity, then it should find she suffered an adverse employment action." Appellant's Br. 32.

(quoting *Miller v. Poretsky*, 595 F.2d 780, 788 (D.C. Cir. 1978))
(ellipsis in original). As discussed above, the magistrate judge
correctly instructed the jury on the relevant legal theory. The
fact that she did so without including the precise language
Czekalski requested was not an abuse of discretion. *See Joy*, 999
F.2d at 556.[6]

### B. Jury Instruction Regarding Missing Evidence

Czekalski next argues that the magistrate judge erred by not
instructing the jury that it could infer from the DOT's failure to
produce certain evidence that the evidence would be unfavorable
to the DOT. We review the trial court's decision not to issue a
"missing-evidence instruction" for abuse of discretion. *United
States v. West*, 393 F.3d 1302, 1309 (D.C. Cir. 2005). Such an
instruction "is appropriate if it is peculiarly within the power of
one party to produce the evidence and the evidence would
elucidate a disputed transaction." *Id.* The party complaining of
the missing evidence bears the burden of demonstrating that it
is peculiarly in the opposing party's control. *Id.* at 1309-10.
Czekalski has not shown that such an instruction would be apt
in this case; she has not identified any evidence peculiarly
available to the DOT—evidence which it did not produce—that
would shed light on her claim. Nor has she described any
attempt on her part to obtain said evidence. *See id.* at 1310
(noting that party failed to carry its burden by, for instance,
seeking or subpoenaing "missing" document). In addition, it

---

[6]Czekalski also claims that "it was reversible error for the judge
to refuse to tell the jury that if it found that the reassignment was to a
position with significantly different responsibilities, it should find
there was an adverse employment action." Appellant's Br. 34. This is
not an accurate recitation of the "'applicable legal principles and
standards.'" *Joy*, 999 F.2d at 556 (quoting *Atl. Cmty. Sch. Dist.*, 879
F.2d at 436); *see* discussion of *Czekalski I infra* Part II.C. Thus, it was
not error for the magistrate judge to omit it.

appears that the "missing evidence" she describes is not missing at all but in fact resides in the record. Czekalski points to Donohue's testimony in which he refers to a "memorandum [that] said that an SES would be responsible for each agency to report directly to the administrator." Trial Tr. 156 (Nov. 14, 2007). She complains that "no documentary evidence was introduced to show that the position of Y2K Program Manager was going to, or ever did, report directly to the Administrator." Appellant's Br. 36. But the record contains such a memorandum and it states, "Administrators will appoint a senior executive to sponsor their Year 2000 effort. Sponsors will report directly to the Administrator . . . ." Pl.'s Trial Ex. 44. Accordingly, the magistrate judge did not abuse her discretion in omitting the instruction.

## C. Motion for a New Trial

Next, Czekalski argues that a new trial is warranted because the jury's verdict was against the weight of the evidence. "This court reviews *de novo* the trial court's denial of a motion . . . for a new trial. The jury verdict stands 'unless the evidence and all reasonable inferences that can be drawn therefrom are so one-sided that reasonable men and women could not disagree on the verdict.'" *Curry v. District of Columbia*, 195 F.3d 654, 658-59 (D.C. Cir. 1999) (quoting *Smith v. Wash. Sheraton Corp.*, 135 F.3d 779, 782 (D.C. Cir. 1998)) (citation omitted). Czekalski asserts that "[t]he evidence at trial was uncontroverted that [she] had significantly different responsibilities when she was transferred." Appellant's Br. 37-38. Because she had "significantly different responsibilities," she argues, she necessarily suffered an adverse employment action. *Id.* at 37-40. Her argument misunderstands the inquiry. She relies on a

passage from *Czekalski I*[7] but she does not heed that opinion or the precedent it invokes. Neither *Forkkio*, *Burlington* nor *Holcomb* suggests that the entire adverse-action standard can be reduced to the question whether a change in position entails "significantly different responsibilities."[8] Nor, for that matter,

---

[7] The passage reads:

> "[W]ithdrawing an employee's supervisory duties," for example, "constitutes an adverse employment action." [*Stewart v. Ashcroft*, 352 F.3d 422, 426 (D.C. Cir. 2003)]; *see Burke v. Gould*, 286 F.3d 513, 522 (D.C. Cir. 2002). So, too, does "reassignment with significantly different responsibilities." *Forkkio v. Powell*, 306 F.3d 1127, 1131 (D.C. Cir. 2002) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)); *see Holcomb v. Powell*, 433 F.3d 889, 902 (D.C. Cir. 2006).

> Czekalski has raised a genuine issue as to whether the reassignment left her with "significantly different"—and diminished—supervisory and programmatic responsibilities.

*Czekalski I*, 475 F.3d at 364.

[8]*Holcomb* and *Forkkio* both cite *Burlington* for the proposition that "reassignment with significantly different responsibilities . . . *generally* indicates an adverse action." *Holcomb*, 433 F.3d at 902 (emphasis added) (quoting *Forkkio*, 306 F.3d at 1131 (quoting *Burlington*, 524 U.S. at 761)). Neither case supports Czekalski's argument that, if she experienced a "reassignment with significantly different responsibilities," she *necessarily* suffered an adverse employment action. Rather, both cases indicate that an adverse employment action results from a "significant change in responsibilities" *if* it effects objective harm. Indeed, *Burlington* itself invokes the Seventh Circuit's statement that "'[a] materially adverse change might be indicated by . . . significantly *diminished* material responsibilities.'" 524 U.S. at 761 (quoting *Crady v. Liberty Nat'l*

does *Czekalski I*. It does not articulate a new rule; it simply lays out authority for the uncontroversial point that, under certain circumstances, a lateral transfer *may* qualify as an adverse action; whether it does or not is "generally a jury question." *See* 475 F.3d at 364-65. The court was as good as its word inasmuch as it remanded for trial on, *inter alia*, the issue of "whether the reassignment left her with 'significantly different'—*and diminished*—supervisory and programmatic responsibilities." *Id.* at 364 (emphasis added). Had the *Czekalski I* court meant what Czekalski contends, it of course would not have remanded for trial on that issue.

As we noted above—and as the magistrate judge informed the jury—we determine whether an action constitutes an adverse employment action by asking whether the employee "experiences materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm." *Forkkio*, 306 F.3d at 1131. Under this standard, the record contains more than enough evidence to uphold the jury's determination that Czekalski's reassignment was not an adverse employment action. Czekalski retained her pay grade and her SES status and there is evidence that her new position—far from harming her current or future professional prospects—in fact proved vital, visible and prestigious. Although Czekalski put on evidence and argued that the new position lacked import when Donohue assigned her to it in 1997, the DOT countered with evidence that the position was regarded as critical even at that early date. We see no reason to disturb the jury's verdict as to this dispute. Because the evidence is not "'so one-sided that reasonable men and women could not disagree,'" *Curry*, 195 F.3d at 659 (D.C. Cir. 1999)

---

*Bank & Trust Co. of Ind.*, 993 F.3d 132, 136 (7th Cir. 1993)) (emphasis added).

(quoting *Smith*, 135 F.3d at 782), on whether Czekalski "experience[d] materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities," *Forkkio*, 305 F.3d at 1131, we agree with the magistrate judge that a new trial is not warranted on this ground.

## D. Bias

Czekalski also argues that a new trial is required because the magistrate judge made several statements and evidentiary rulings that manifested bias against her and deprived her of "a fair and impartial trial." Appellant's Br. 40. Judicial comments during trial establish bias if "they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994); *see United States v. Carson*, 455 F.3d 336, 355 (D.C. Cir. 2006). "*Not* establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display." *Liteky*, 510 U.S. at 555-56. Having reviewed the trial transcript, including the portions Czekalski highlights, we see no indicia of "a high degree of favoritism or antagonism" requiring a new trial in this case. *Id.* at 555. Moreover, "judicial rulings alone almost never constitute a valid basis" for an allegation of bias, *id.*, and we see none here that would support reversal on that ground.

For the foregoing reasons, we affirm the judgment of the district court.

*So ordered.*