ROGERS, Circuit Judge,
dissenting:
Once again the court returns to the issue of the proper role of the district court at summary judgment but this time stumbles badly.
I.
Samuel Ortiz-Diaz was a criminal investigator in the Office of the Inspector General at the U.S. Department of Housing and Urban Development. That Office had adopted a merit staffing plan, which includes a voluntary transfer program whereby employees, including investigators, could request transfer to a different location, at no cost to the government. The merit staffing plan’s stated policy is that the program is to be administered without regard to race, sex, color, national origin, age, or disability. The program was a privilege of Ortiz-Diaz’s employment. See Hishon v. King & Spalding, 467 U.S. 69, 75-76, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).
Following years of working for the Office of the Inspector General, Ortiz-Diaz accepted a GS-14 position in the central office in Washington, D.C. At some point, he requested a transfer to Albany, New York where the Special Agent in Charge in the region had requested an agent. When an email was circulated regarding a position in Hartford, Connecticut, Ortiz-Diaz also requested to transfer there. Both transfer requests were denied by his supervisor. Ortiz-Diaz viewed gaining criminal experience in the field as the way to advance within the Inspector General’s Office, a view the government does not dispute. Instead, the government disputes Ortiz-Diaz’s claim that the denials were due to his supervisor’s bias against Hispanics and Puerto Ricans, see Am. Compl. ¶¶ 10-11, 16-18, and moved for summary judgment in the district court on the grounds that he had suffered no adverse employment impact and could not demonstrate pretext. The district court agreed as to the first ground. Ortiz-Diaz v. U.S. Dep’t of Housing & Urban Dev., 75 F.Supp.3d 561, 565-67 (D.D.C. 2014).
Ortiz-Diaz, however, had submitted his sworn declarations to the district court stating that a transfer to the field would provide the type of experience that would enable him to advance within the Inspector General’s Office and he explained why. He also proffered evidence that his supervisor had approved transfer requests of white comparators without a decrease in pay or benefits, and that those transfers were approved notwithstanding the lack of an office or need in the transfer city, which were the reasons given for denying Ortiz-Diaz’s transfer requests. He prof *495 fered as well a letter from a colleague corroborating his claim that his supervisor was biased against minorities. And the government’s supplemental response to his discovery requests produced a list of the discrimination complaints that had been filed against Ortiz-Diaz’s supervisor, who was responsible for approving his transfer requests and his future promotion within the D.C. Office.
Further, Ortiz-Diaz had filed a motion to compel “full and complete responses” to his discovery requests relating to potential comparators, stating the government had failed to produce documentary evidence of identified transfers and he could not independently determine which transfers were voluntary or involuntary. Responding to his opposition to summary judgment, the government had claimed that the five transfers mentioned by Ortiz-Diaz were in response to hardship applications or involved individuals who were not similarly situated.
After his transfer requests were denied, Ortiz-Diaz resigned from his GS-14 position in the Inspector General’s Office, where had worked for nine years. He accepted a GS-13 position elsewhere in the Department.
II.
Summary judgment is appropriate only if the record evidence shows that “there is no genuine dispute as to any material fact” and that the moving party “is entitled to judgment as a matter of law.” Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). This court, like the district court, must “ ‘examine the facts in the record and all reasonable inferences derived therefrom in a light most favorable to’ the nonmoving party.” Robinson v. Pezzat, 818 F.3d 1, 8 (D.C. Cir. 2016) (quoting DeGraff v. District of Columbia, 120 F.3d 298, 299-300 (D.C. Cir. 1997); see Adickes v. S.H. Kress & Co., 398 U.S. 144, 158, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). Indeed, “[t]he evidence of the non-movant is to be believed.” Anderson, 477 U.S. at 255, 106 S.Ct. 2505. “This mode of analysis serves to separate the ‘jury functions’ of making ‘[credibility determinations ..., weighing ... the evidence, and ... drawing ... legitimate inferences from the facts’ from the district court’s role as the arbiter of legal questions.” Robinson, 818 F.3d at 8 (quoting Anderson, 477 U.S. at 255, 106 S.Ct. 2505) (alterations in original).
As this court explained in Arrington v United States, 473 F.3d 329 (D.C. Cir. 2006), “[although a jury might ultimately decide to credit the version of the events described by [the] defendant!] over that offered by the plaintiff, this is not a basis upon which a court may rest in granting a motion for summary judgment.” Id. at 333 (internal quotation marks omitted). The summary judgment standard requires us to credit the plaintiffs version of events, even if “ ‘directly contradictory’ to other testimony.” Robinson, 818 F.3d at 8 (quoting Tolan v. Cotton, — U.S. -, 134 S.Ct. 1861, 1867, 188 L.Ed.2d 895 (2014)). “Thus, we do not ‘determine the truth of the matter,’ but instead decide only ‘whether there is a genuine issue for trial.” Pardo-Kronemann v. Donovan, 601 F.3d 599, 604 (D.C. Cir. 2010).
A.
Today, the court, in concluding upon de novo review that Ortiz-Diaz did not suffer an adverse employment action as a result of the denial of his transfer requests, misapplies the summary judgment standard. In Stewart v. Ashcroft, 352 F.3d 422, 426-27 (D.C. Cir. 2003), the court explained that while lateral transfers entailing no diminution in pay and benefits were ordinarily not adverse employment actions, de *496 nials of transfers could be adverse employment actions if they result in “objective, tangible, and materially adverse consequences [affecting] the terms, conditions, or privileges” of the plaintiffs employment, id. at 426 (citing Brown v. Brody, 199 F.3d 446, 457 (D.C. Cir. 1999)), even if the employee suffered no diminution in pay or benefits. The court referred, as an example, to denial of an opportunity to advance within the hierarchy of a department. Id. (citing Brown, 199 F.3d at 457). Although “purely subjective injuries, such as dissatisfaction with a reassignment,” are not adverse actions, Forkkio v. Powell, 306 F.3d 1127, 1131 (D.C. Cir. 2002), not all “dissatisfaction” is immaterial. For instance, in Ginger v. District of Columbia, 527 F.3d 1340, 1344 (D.C. Cir. 2008), the court concluded that a transfer of police officers to a more difficult and inconvenient work schedule could be an adverse action, even without a change in the officers’ responsibilities or pay.
So have our sister circuits. For example, the First Circuit explained, noting the “pretty open-ended language” of “terms, conditions, or privileges,” in Title VII, 42 U.S.C. § 2000e-2a, that an adverse employment action can include the denial of a lateral transfer in view of the “the impact on [the plaintiff]” and the plaintiffs affidavits that it was “customary practice” to grant “hardship” transfers. Randlett v. Shalala, 118 F.3d 857, 862 (1st Cir. 1997) (citing cases). Indeed, as Judge Harlington Wood, Jr., joined by Judge Ripple and Senior Judge Eschbach, wrote for the Seventh Circuit in reversing the grant of summary judgment:
One does not have to be an employment expert to know that an employer can make an employee’s job undesirable or even unbearable without money or benefits ever entering into the picture.
Collins v. Illinois, 830 F.2d 692, 703 (7th Cir. 1987).
Ortiz-Diaz proffered evidence not merely that he would be more satisfied working in Albany or Hartford, but that he would be better positioned to advance within the Inspector General’s Office. According to Ortiz-Diaz’s sworn declarations, a lateral transfer would have enhanced his opportunities for promotion. See Pltf.’s Decl. (June 25, 2014) in Support of Oppo. to Deft’s Mot. for Sum. Judgment ¶ 12 (“Pltf.’s Decl.”); Pltf.’s Supp. Decl. (Sept. 4, 2012) in Support of Oppo. to Deft.’s Mot. for Sum. Judgment ¶¶ 2, 4 (“Pltf.’s Supp. Deck”). Specifically, he explained that in order to better position himself for promotion, he sought “to return to the field in order to gain experience at the GS-14 level, establish favorable relationships with supervisors in the field, ... and give [him]self a bit of distance from the discriminatory environment at headquarters.” Pltf.’s Supp. Decl. ¶ 5. Investigators in Regions 1 and 2, to which he sought transfers, “were lauded for their accomplishments and there did not appear to be serious performance deficiencies” in those regions. Id. ¶ 6. The Albany and Hartford locations presented an opportunity to engage in “important, high profile work” that would enhance his chances of promotion. Pltf.’s Decl. ¶ 12. Additionally, in Albany, his supervisor would have been Rene Febles, an Hispanic whom Ortiz-Diaz believed would not be inclined to discriminate against him because he was an Hispanic and Puerto Rican. Id. By contrast, in the Washington, D.C. office, Ortiz-Diaz explained that he considered his chances of advancement limited because his supervisor was racially biased against Hispanies and other minorities, and he was not alone in that view. Id. ¶¶ 6-7; see Letter from Patrick Jefferson to Eden Gaines Brown, Esq. (Mar. 12, 2012); Deft.’s Response to Interrogatories, Request No. 5 (Dec. 20, 2013) (supplemen *497 tal discovery response listing discrimination complaints filed against Ortiz-Diaz’s supervisor).
These are not mere “bare assertions” or subjective preferences, as the court suggests, see Op. 492; rather, they are objective statements — uncontested by the government — about the expected professional benefits to Ortiz-Diaz from the requested transfers. Evidence of his supervisor’s discriminatory statements about Hispanics in the workplace and other complaints of discrimination filed against his supervisor not only corroborated Ortiz-Diaz’s view of his supervisor’s bias, but was relevant, contrary to Judge Henderson’s view, to showing that denial of his transfer requests had “materially adverse consequences,” Fork-kio, 306 F.3d at 1131, on his chances for advancement if he remained in the D.C. Office. His resignation following nine years in the Inspector General’s Office for a lesser paying job underscores the adversity caused by the denial of his transfer requests as a result of the discriminatory bind in which he found himself in the D.C. Office.
Such evidence is sufficient to create a triable issue as to whether the denial of Ortiz-Diaz’s transfer requests constitutes a materially adverse employment action. The court, although acknowledging that “a lateral transfer with increased promotion prospects might qualify” as an adverse action, Op. 492, avoids this conclusion only by improperly discounting Ortiz-Diaz’s sworn declarations. Yet, contrary to the court’s view, see Op. 492-93 n.6, a plaintiffs sworn statement, even if uncorroborated, can provide sufficient evidence to establish a disputed issue of material fact. See Robinson, 818 F.3d at 9 (citing Arlington, 473 F.3d at 336, 338); see also Tolan, 134 S.Ct. at 1867. Ortiz-Diaz’s statements about the benefits of transfer are not unduly speculative or inappropriately conclusory, see Forkkio, 306 F.3d at 1131, in the context of the no-cost transfer program whereby an employee could switch job locations. This is not a case in which the plaintiff simply avers that his supervisor behaved with discriminatory intent, see Op. 492-93 n.6 (citing, e.g., Holcomb v. Powell, 433 F.3d 889, 899 (D.C. Cir. 2006)), but a case in which the plaintiff stated objective facts about the world that could be proved or disproved at trial.
Furthermore, by questioning the credibility of Ortiz-Diaz’s sworn statements that a position in the field would lead to better opportunities for advancement, the court fails on summary judgment, as the Supreme Court has repeatedly instructed, to construe the record and reasonable inferences “in the light most favorable to the party opposing the motion,” here, Ortiz-Diaz. Adickes, 398 U.S. at 158-59, 90 S.Ct. 1598 (internal quotation and citation omitted). Not only does the court err in taking a position never advanced by the government in moving for summary judgment, see Pardo-Kranemann, 601 F.3d at 609, the court errs in deriding as “lower rung” the positions to which Ortiz-Diaz sought to transfer in Albany and Hartford. Op. 492, 492-93, -n.6. Ortiz-Diaz’s evidence is to the contrary, explaining exactly why he considered the transfers to afford opportunities for professional advancement that his position in the D.C. Office did not, and the government has never challenged that evidence. Even if the court is referencing a transfer to a GS-13 position, Ortiz-Diaz proffered evidence that his supervisor approved other transfers without a diminution in grade. See Pltf.’s Oppo. to Sum. Judgment ¶ 24; Pltf.’s Decl. ¶ 20.
Whether an employment action is adverse is a question for the jury. Pardo-Kronemann, 601 F.3d at 607. The government did not dispute that in-field criminal-investigative work was the path for Ortiz- *498 Diaz to position himself for promotion, or that Regions 1 and 2 were prime locations for doing so. Yet the court today demands more details. See Op. 497-98. On what basis? The government has never contested Ortiz-Diaz’s claims on that ground, and “the evidence of the non-movant is to be believed,” Anderson, 477 U.S. at 255, 106 S.Ct. 2505. Neither did the government challenge that the no-cost transfer program was a privilege of his employment, see Hishon, 467 U.S. at 75-75, 104 S.Ct. 2229. Febles’ email requesting an investigator in Albany and the email about the transfer opportunity in Hartford, as well as a Hartford position that was filled shortly after Ortiz-Diaz resigned, were corroborative of the availability of the opportunities for transfer to prime in-field locations. Ortiz-Diaz’s resignation and acceptance of a lower paying position lends gravitas, at this stage of the proceedings, to the record evidence and reasonable inferences therefrom of adversity as a result of being denied an opportunity for professional advancement. See Stewart, 352 F.3d at 427; cf. Bouman v. Block, 940 F.2d 1211, 1229 (9th Cir. 1991).
Under the circumstances, upon viewing the evidence most favorably to Ortiz-Diaz as the non-moving party, as the court must, a reasonable jury could find the denials of the requested transfers under the no-cost transfer program caused him “objectively tangible harm.” Douglas v. Donovan, 559 F.3d 549, 552 (D.C. Cir. 2009). Nothing in our precedent requires a different outcome on summary judgment, and the court offers no analysis for the conclusion it does. See concurring op., Ka-vanaugh, J. Instead, the court’s conclusion appears to indicate, much as Ortiz-Diaz’s counsel suggested during oral argument, that there can be no material adversity from transfer denials where a supervisor has a policy that, notwithstanding a concrete opportunity for professional advancement, no Hispanics need apply for the no-cost transfer program at the D.C. Office of the Department’s Inspector General’s Office. See Oral Arg. Rec. 18:49-19:04 (“You have a discriminatory decisionmaker saying that only whites ... can participate in this [no-cost transfer] program.”). Yet no court could condone that result.
B.
Furthermore, on this record, there is no other basis to grant summary judgment to the government on the merits of Ortiz-Diaz’s discrimination claims. Again, the court must consider the evidence and reasonable inferences most favorably to Ortiz-Diaz as the non-moving party. Also, “summary judgment [must] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition.” Anderson, 477 U.S. at 250 n.5, 106 S.Ct. 2505 (citing Fed. R. Crv. P. 56(f)); see Russell v. Principi, 257 F.3d 815, 820-21 (D.C. Cir. 2001).
In moving for summary judgment, the government stated that Ortiz-Diaz’s requested transfers were denied because there was no available position and no need for another agent in either Albany or Hartford at the time of his transfer request. See Deft.’s Statement of Material Facts in Support of Sum. Judgment ¶¶ 17-19. Ortiz-Diaz’s factual statement in opposing summary judgment disputed these factual assertions. See Pltf.’s Statement of Material Facts in Dispute ¶¶ 17-19. Nonetheless, once an employer offers a legitimate, non-discriminatory reason for the adverse action, the “one central question” is whether Ortiz-Diaz has proffered “sufficient evidence for a reasonable jury to find that the [government’s] asserted non-discriminatory reason was not the actual reason and that the [government] intentionally discriminated against [him] on the basis *499 of [his membership in a protected class].” Brady v. Office of Sergeant at Arms, 520 F.3d 490, 494 (D.C. Cir. 2008). “Employees may cast doubt on the employer’s proffered reason by, among other things, pointing to [1] changes and inconsistencies in the stated reasons for the adverse action; [2] the employer’s failure to follow established procedures or criteria; [3] the employer’s general treatment of minority employees; or [4] discriminatory statements by the decisionmaker.” Evans v. Sebelius, 716 F.3d 617, 620 (D.C. Cir. 2013) (internal quotation marks omitted); Morris v. McCarthy, No. 14-5074, 2016 WL 3254902, at *5 (D.C. Cir. June 14, 2016) (citing Aka v. Wash. Hosp. Ctr., 156 F.3d 1284, 1289 (D.C. Cir. 1998)); see Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). In opposing summary judgment, Ortiz-Diaz presented arguments, based on record evidence, to cast doubts for each of these reasons on the government’s asserted non-discriminatory reasons. See Pltf.’s Oppo. to Sum. Judgment Part IV C, D. “Although evidence of pretext is not per se sufficient to permit an inference of [discrimination], it usually will be enough to get a plaintiffs claim to the jury.” Pardo-Kronemann, 601 F.3d at 604 (internal quotation and alterations omitted).
Ortiz-Diaz sought to show pretext in part through evidence that transfer requests of similarly situated white employees were granted, regardless of agency need or existing vacancies or offices. See Pltf.’s Mem. in Support of Mot. to Compel 3. Such evidence is relevant to demonstrating pretext. Showing that transfers of white comparators were routinely approved notwithstanding the absence of vacancies or offices in the transfer location could demonstrate that the reasons given for denying his transfer requests are “unworthy of credence,” Reeves, 530 U.S. at 143, 120 S.Ct. 2097 (quoting Tex. Dept. of Community Affairs v. Burdine, 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). In addition, Ortiz-Diaz’s declaration specifically recounted his supervisor’s discriminatory statements about Hispanics in the workplace, see Pltf.’s Deck ¶¶ 6-7, and there was evidence discrimination complaints had been previously filed against his supervisor. Such statements by a supervisor, this court has held, are sufficient to defeat summary judgment. See Morris, No. 14-5071, 2016 WL 3254902, at *7 (citing cases). To the extent the government attempted to show that Ortiz-Diaz’s supervisor was not biased against Hispan-ies, see Mem. of Points & Auth. in Support of Deft.’s Mot. for Sum. Judgment at 5-6, at the summary judgment stage the court must credit Ortiz-Diaz’s evidence, as the non-movant, and accord all reasonable inferences from the evidence in his favor. See Adickes, 398 U.S. at 158, 90 S.Ct. 1598; see also Anderson, 477 U.S. at 255, 106 S.Ct. 2505. Credibility is a question for the trier of fact. See Reeves, 530 U.S. at 142, 120 S.Ct. 2097.
And even if Ortiz-Diaz had not proffered sufficient evidence of pretext to preclude summary judgment, Ortiz-Diaz’s motion to compel full and complete discovery would need to be addressed anew. Cf. Russell v. Principi, 257 F.3d at 820-21. In moving to compel, Ortiz-Diaz argued that in discovery the government had failed to produce documents or to indicate which of the transfers it had idéntifíed were voluntary as opposed to mandatory; he was unable to identify them but a government witness had explained there was a paper trail by which the government could. See Mot. to Compel 3-4; Pltf.’s Oppo. to Deft.’s Mot. for Sum. Judgment at 15-16; Depo. of Lester Davis, Acting Insp. General of Investigations, HUD, at 14, 21 (Apr. 8, 2014). The district court never considered the *500 motion in connection with the question whether Ortiz-Diaz had shown pretext; in granting summary judgment on the ground Ortiz-Diaz had failed to establish an adverse employment action, the district court denied the motion on the ground that it would not produce evidence that would alter its conclusion on that issue. See Ortiz-Diaz, 75 F.Supp.3d at 565-68. Because the motion to compel sought evidence of pretext, summary judgment would be inappropriate.
Accordingly, because on summary judgment the evidence is to be viewed most favorably to the party opposing the motion, a reasonable jury could find that the denial of Ortiz-Diaz’s transfer requests adversely affected his opportunity for professional advancement, see Stewart, 352 F.3d at 427, and because, as the district court observed, the reasons for the denial of his transfer requests were “hotly disputed,” Ortiz-Diaz, 75 F.Supp.3d at 564, summary judgment is inappropriate. I respectfully dissent.