# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued February 22, 2018          Decided May 15, 2018

No. 16-5299

STEVEN C. DRIELAK,
APPELLANT

v.

E. SCOTT PRUITT, ADMINISTRATOR,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:14-cv-01088)

*Morris E. Fischer* argued the cause and filed the briefs for appellant.

*Benton G. Peterson*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Jessie K. Liu*, U.S. Attorney, and *R. Craig Lawrence*, Assistant U.S. Attorney.

Before: HENDERSON and KATSAS, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*.

Opinion of the Court filed by *Senior Circuit Judge* RANDOLPH.

RANDOLPH, *Senior Circuit Judge*: Steven C. Drielak brought this action claiming that his supervisors at the Environmental Protection Agency discriminated against him because of his age, in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634. The district court, Cooper, J., issued a comprehensive opinion explaining why the court entered summary judgment against Drielak. *Drielak v. McCarthy*, 209 F. Supp. 3d 230 (D.D.C. 2016).

EPA hired Drielak in 2003 as a law-enforcement specialist within the agency's Office of Criminal Enforcement, Forensics, and Training. He was then 50 years old. For the next seven years, Drielak rose through the ranks, eventually becoming Director of the Homeland Security Division in the Criminal Enforcement Office. In 2010, as part of an agency-wide restructuring, EPA eliminated the Homeland Security Division. The director of the Criminal Enforcement Office reassigned Drielak to the Office's Field Operations Program.

From 2010 through 2012, Drielak unsuccessfully applied for open positions in the Criminal Enforcement Office. Each time, the agency selected someone younger than Drielak. The district court, after describing these events and other alleged instances of age discrimination during this period, held that many of Drielak's claims were barred. *Drielak*, 209 F. Supp. 3d at 234–35, 237–39. His claims were barred because Drielak did not comply with an EEOC regulation requiring a federal employee to "contact" a "Counselor within 45 days of the date of the matter alleged to be discriminatory." 29 C.F.R. § 1614.105(a)(1).[1] The interplay between the statute and the

---

[1] The Act gave Drielak another choice for bringing an action in federal court. He could have notified the Equal Employment Opportunity Commission of his intent to file an action. *See* 29 U.S.C. § 633a(d). He did not do so.

regulation is more intricate than just described. The district court's opinion and an opinion of this court provide more details. *See Drielak*, 209 F. Supp. 3d at 237; *Rann v. Chao*, 346 F.3d 192, 195–97 (D.C. Cir. 2003).

Drielak's defense is in the nature of confession and avoidance. He concedes that, prior to August 22, 2012, he did not consult with a Counselor in EPA's Office of Civil Rights about several discriminatory acts he allegedly experienced more than 45 days before. But he maintains that he should be excused from the regulatory filing deadline. The regulation contains a provision extending the 45-day period if "the individual shows [1] that he or she was not notified of the time limits and was not otherwise aware of them, [2] that he or she did not know and reasonably should not have [] known that the discriminatory matter or personnel action occurred, [3] that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits, or [4] for other reasons considered sufficient by the agency or the Commission." 29 C.F.R. § 1614.105(a)(2) (numbering added).

Only the clause numbered [2] is involved in this case. *See Drielak*, 209 F. Supp. 3d at 239 & n.2. To the district court, the clause meant that Drielak had to show "that he did not have a reasonable suspicion of age discrimination"[2] until a colleague

---

[2] The district court's "reasonable suspicion" standard apparently originated in *Paredes v. Nagle*, No. 81-1374, 1982 WL 319 (D.D.C. Jan. 17, 1982), at a time when the regulation did not contain the current "tolling" provision. *Compare* 29 C.F.R. § 1613.214(a)(4) (1978) *with* 29 C.F.R. § 1614.105(a)(2) (2010) (adding clause [2]). Even so, the EEOC endorses the district court's view of its revised regulation. *See Williams v. Runyon*, Appeal No. 01931274, 1993 WL 1506710, at *2 (EEOC Apr. 7, 1993); *Spencer v. Esper*, Appeal No.

told him that a candidate for a position was not going to be considered because he was close to retirement. *Id.* at 238; *see also* Brief for Appellant at 7. We cannot see how this conversation could possibly excuse Drielak's noncompliance with the 45-day period. Drielak admitted, under penalty of perjury, that his conversation with this colleague—which supposedly first triggered his suspicion of age discrimination—took place after he had already complained about discrimination to the Counselor in EPA's Office of Civil Rights.[3]

As to Drielak's timely claims of age discrimination, he failed to establish that he "suffered an adverse employment action"—one of the "two essential elements of a discrimination claim." *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008).

---

0120162771, 2018 WL 1466224, at *2 (EEOC Mar. 15, 2018). Because neither party in this case raised any question about the "reasonable suspicion" standard, and because this court has never decided whether the "reasonable suspicion" standard accurately states current law, we merely assume, without deciding, that it is the proper standard.

[3] In addition, under the regulation, Drielak had the "responsibility, when possible, to further investigate a personnel action in order to determine whether the action was discriminatory." *Miller v. Hersman*, 594 F.3d 8, 12 (D.C. Cir. 2010). Each time Drielak applied for a position, he knew that a younger candidate was selected in his stead. Knowledge of even one non-selection in favor of an individual who does not share a plaintiff's protected characteristic suffices to tip off a plaintiff to the possibility of discrimination. *See Stewart v. Ashcroft*, 352 F.3d 422, 425–26 (D.C. Cir. 2003). Drielak did not undertake any inquiry into the possibility of age discrimination.

Each of his claims has a common theme: his supervisors undermined his authority and placed barriers in the way of his professional development. In late-July 2012, Drielak was not invited to a meeting during which one of his projects was discussed. In August, a briefing paper for the Administrator of the Office of Criminal Enforcement was assigned to one of Drielak's subordinates instead of to him. In October, Drielak's supervisors allowed one of his agents to work on a project without his consent. These slights—Drielak says—relegated him to "professional purgatory." Brief for Appellant at 20.

We agree with the district court that these events did not cause "objectively tangible harm" to Drielak of the sort that would render them adverse employment actions. *Brown v. Brody*, 199 F.3d 446, 457 (D.C. Cir. 1999). While actions other than an outright firing or demotion can be adverse, a claim based on less must "rest on a significant change in [] job responsibilities." *Forkkio v. Powell*, 306 F.3d 1127, 1131 (D.C. Cir. 2002). Here Drielak's responsibilities hardly changed. He was not invited to a meeting but continued to attend others. *Cf. id.* (no longer attending management meetings was "not sufficiently significant to amount to materially adverse consequences") (internal quotation marks omitted). Although one of Drielak's agents worked on a project Drielak would not have approved, Drielak retained control over the majority of his agents' actions. Drielak's own characterizations of his experience are belied by the record. How could Drielak's exclusion from the initial drafting of the briefing paper for the Administrator of the Office of Criminal Enforcement "severely impact[] . . . his potential for being promoted"? Brief for Appellant at 22. He was later given the opportunity to work on this particular project and present it to the Administrator—an opportunity he declined. The short of the matter is that Drielak has "failed to provide any evidence, beyond his conclusory assertions . . ., of any adverse consequence to his position or

future career." *Forkkio*, 306 F.3d at 1131 (internal quotation marks omitted).

Drielak's remaining claim alleges retaliation in response to his invoking EPA's internal grievance procedure. He argues that his supervisors transferred four of his agents to another division in April of 2014 to retaliate against him for filing a complaint with EPA's Office of Civil Rights.

To prove retaliation, a plaintiff must establish that he suffered a materially adverse action because he brought or threatened to bring a discrimination claim. *Baloch*, 550 F.3d at 1198. Drielak has shown no casual connection between the reassignment of his agents and his protected activities.

Drielak filed his complaint with EPA's Office of Civil Rights in December of 2012. Drielak's supervisors reassigned his agents fifteen months later. The Supreme Court has considered temporal proximity as evidence of causation so long as the connection is "very close." *Clark County School District v. Breeden*, 532 U.S. 268, 273 (2001) (per curiam) (internal quotation marks omitted). Fifteen months falls far outside the three-to-four month periods the Supreme Court noted were insufficient to defeat summary judgment in *Clark County*. *See id.* at 273–74 (collecting cases). Even if we disregard Drielak's statement that he informed his supervisors about his complaint in 2012 and even if we assume that his supervisors learned about his protected activity in 2013 when they filed affidavits in connection with the investigation, Drielak's claim fails. Their affidavits were filed more than six months before Drielak's reassignment, far from the temporal proximity *Clark County* thought worthy of evidentiary value.

Drielak would have us avoid *Clark County* on the basis that his evidence amounts to more than just temporal proximity. He

insists that his reassignment was retaliatory because EPA's explanation for his reassignment was not true. But EPA's reason for acting—that an understaffed division needed more agents—is an explanation Drielak himself recognized. Agents in other divisions went through similar reassignments around the same time, and the remainder of Drielak's agents were reassigned following his retirement the next year. Drielak's agents were already assisting the division in a supplemental role. The division needed more than supplemental support.

*Affirmed*.